**DOHERTY v. DUBBS.**

**Patent Appeal No. 3171.**

Court of Customs and Patent Appeals.

Jan. 22, 1934.

See, also, 65 F.(2d) 151.

Edmond G. Borden, of New York City (Frank E. Barrows, of New York City, C. M. Fisher, of Washington, D. C., and E. H. Merchant and Dean S. Edmonds, both of New York City, of counsel), for appellant.

Charles M. Thomas, of Washington, D. C. (Frank L. Belknap, of Chicago, Ill., and Lawrence C. Kingsland, of St. Louis, Mo., of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

Doherty appeals to this court from a decision of the Board of Appeals of the United States Patent Office wherein the board, reversing the decision of the Examiner of Interferences, awarded priority to Dubbs upon three counts of an interference involving the subject-matter of oil cracking methods and devices.

The interference was declared between patent No. 1,597,674, granted to Doherty August 31, 1926, on an application filed November 22, 1922, and an application of Dubbs, serial No. 479,444, filed June 22, 1921. The Dubbs application was passed to allowance April 22, 1926, and was pending issue at the time of the issuance of the aforesaid patent to Doherty. On October 6, 1926, Dubbs filed renewal of his original application and, by amendment, inserted into the renewal application certain claims of the Doherty patent. Thereafter the proceedings took such a course as that the interference finally presented to the Examiner of Interferences and to the Board of Appeals embraced the three counts now before us. These read as follows:

"1. A continuous process of cracking oil comprising circulating oil in a closed cycle circuit, cracking the oil by distillation under a high pressure and temperature in one portion of the circuit, distilling the residual oil from said cracking by evaporating it under a reduced pressure in another portion of the circuit, and separately collecting condensate from the distillations in the different portions of the circuit.

"2. A continuous process of cracking oil comprising circulating oil in a closed cycle circuit, cracking the oil by distillation under a high pressure and temperature in one portion of the circuit, evaporating the residual oil from said cracking by distillation under a reduced pressure in another portion of the circuit, separately collecting condensates obtained from the distillations in the different portions of the circuit, introducing oil into the cracking portion of the circuit, and applying heat only to the oil being introduced into the cracking portion of the circuit.

"3. An oil distilling apparatus comprising a pipe still, a cracking chamber, means for forcing oil from the pipe still into the cracking chamber, an evaporator connected with the cracking chamber, a condenser connected with the evaporator, means to conduct condensate to the pipe still, a conductor for leading oil from the evaporator back to the cracking chamber, and a condenser connected with the cracking chamber."

The brief, filed on behalf of appellant, succinctly states three grounds upon which is based the contention that the decision of the Board of Appeals should be reversed, as follows:

"I. No interference in fact exists between the Dubbs application and the Doherty patent because there is a wide difference between the ends which the two inventors sought to attain, the means to which they resorted in attaining those ends and the operations practiced with those means.

"II. The Doherty claims presented · by Dubbs in his renewed application are for subject matter widely different from that of the claims originally allowed to Dubbs, and, under the doctrine announced in the Kaisling case, Dubbs must not .be granted a patent for anything other than that 'for which a patent was ordered to issue.' Therefore the claims in issue can not be awarded to Dubbs, and, as they have already been issued to Doherty, denial of them to Dubbs ends this controversy.

"III. The Dubbs apparatus is commercially useless for the practice of the procedure described in the Doherty patent and specified in the Doherty claims which Dubbs adopted, and in that sense the Dubbs process and apparatus are inoperative and the claims at issue should be denied to Dubbs for that reason."

It is proper to state that a law examiner in a decision upon a motion by Doherty to dissolve, rendered prior to that of the Examiner of Interferences, took substantially the same view of the issues raised, in so far as they were before him, as that subsequently taken by the Board of Appeals.

There is no question whatsoever but that the devices of the respective parties, as illustrated by their drawings, differ radically. Appellant's brief declares:

"The apparatus and process of the Doherty patent are as widely different from the apparatus and process of the Dubbs application as such things could be while still being in the art of cracking oil. On reading the patent and the application, it is difficult to find any element of similarity between them beyond the fact that, like any other oil-cracking process and apparatus, both employ stills and condensers and pumps."

Notwithstanding this radical difference, however, appellant does not seriously question the fact that, in a literal sense, the counts, both as to the process described in counts 1 and 2, supra, and as to the apparatus described in count 3, supra, do read upon the Dubbs disclosure.

The gist of appellant's argument is that Dubbs originally had no purpose in view similar to that of Doherty, and no conception of a device for solving the problem which Doherty claims to have solved; that the Dubbs apparatus was never intended to function in the same manner or to attain the same ends as the Doherty apparatus; and that the Dubbs system is, in fact, inoperative for accomplishing the ends sought and attained by Doherty, that is the continuous recycling of oil residuum, in a closed cycle circuit, from a dephlegmator through the different elements called for by the counts. It is insisted that any effort to operate the Dubbs device to accomplish the purposes of Doherty would fail because inevitably the passages through which the oil would have to flow would soon become clogged by the deposit of carbon formed by the cracking of the oil.

It is insisted, in effect, that the court should look beyond the mere words of the counts to the "underlying conception which the claims were originally intended to present when they were formulated by Doherty." In this connection attention is directed to the claims contained in the Dubbs application, as same stood allowed before the filing of the latter's renewal application, it being pointed out (presumably as evidence of the construction then given by Dubbs to his disclosures) that no one of those claims corresponds in substance to any one of the counts, and it is argued from this that Dubbs had not then any conception of the Doherty invention.

It is then argued that under the doctrine of the case of In re Kaisling, 44 F. (2d) 863, 865, 18 C. C. P. A. 740, Dubbs is not entitled to present in his renewal application the claims, which became the counts, because they differ so radically from the claims which he originally made, and which were allowed him, as that they amount to subject-matter different from that "for which a patent was ordered to issue."

In view of the contentions made with reference to the applicability of the doctrine of the Kaisling Case, supra, to the case at bar, we give that first consideration.

It is to be remarked, in the first place, that the Kaisling Case, supra, was an ex parte proceeding arising after certain interference proceedings had been finally adjudicated. Patent was offered Kaisling upon a divisional application which, under requirement of the Examiner for division, had been carved out of

a parent application. The parent application had carried claims for three features of an alleged invention, to wit, "(a) a lock switch structure, (b) a lock per se, and (c) a system in which the lock switch was a useful element for dimming certain of the lights."

The parent application and the divisional application were separately prosecuted.

During the prosecution of the parent application, three claims (priority upon one of which had been awarded Kaisling in some interference proceeding) were canceled from it, these claims covering the system which was the feature above alluded to as (c). With this, and possibly other amendments, the parent application was finally granted, the claims therein being limited to the switch, or element (a), supra. This was allowed December 16, 1924, and the patent was taken out January 20, 1925.

In the meantime, the divisional application had been prosecuted and during its prosecution it was amended so that its claims finally covered only the feature of the lock per se, that is element (b), supra. In this form it was allowed, July 18, 1924, but the applicant failed to pay the final fee, so that the patent did not, in fact, issue.

On January 25, 1925, the day following the formal taking out of the patent based upon the parent application, the assignee of the applicant filed a renewal application of the divisional application, but, as is stated in this court's opinion in the case, it was sought, by an amendment submitted with the renewal application, "virtually to cancel the lock claims as they had been allowed and substitute therefor" the claims for the system, that is element (c) supra, which had been canceled out of the parent application before its allowance.

In sustaining the action of the Board of Appeals affirming that of the Examiner, denying the right of appellant in that case to so proceed, this court said:

"The patent was offered upon a divisional application, carved out of the parent application. This divisional application, for the purposes of this case, must be treated as though it were an entirely original application, and the renewal application must be tested by this divisional one in the form in which the latter stood when allowed."

The Kaisling Case, as our opinion there stated, was a somewhat complicated one, on account of the multiplicity of actions had upon it in the Patent Office, and it appeared necessary to enlarge upon certain phases of it in the opinion. As a result, the opinion contains expressions which, considered abstractly and apart from the facts and issues there dealt with, might lead to the conclusion that this court went further than there was any intention of going and attempted to lay down new principles of patent law or practice.

It would seem that learned counsel for appellant have so construed that opinion in their presentation of the instant case.

Such construction is erroneous and the opinion there rendered should be considered as a precedent only as to issues which are analogous to the issues there dealt with and decided.

The instant case does not present such analogy. So far as the particular phase upon which the Kaisling Case, supra, is cited here is concerned, the only pertinent question seems to be whether, in his renewal application, Dubbs was entitled to make claims in addition to those which stood allowed, provided his disclosures would support them. Dubbs did not seek to cancel any of the claims which stood allowed and substitute new matter therefor as did Kaisling's assignee, nor is there any question of a divisional application involved.

Kaisling's assignee in that ex parte proceeding sought not only to obtain patent upon subject-matter not claimed in the patent allowed upon the divisional application, but sought to cancel what he had tentatively received and substitute therefor unclaimed matter which he had formerly and formally canceled out of the parent application. Here Dubbs apparently seeks only to add to the claims which stood allowed additional claims which he alleges are supported by his original disclosure.

 If there be inconsistency, in fact, between the claims which stand allowed and the additional claims which he seeks to add, the proper time for adjudication upon that question would seem to be when the application is considered ex parte, or at least it does not appear proper in this proceeding.

The Kaisling Case, supra, is not an authority for holding Dubbs not entitled to make the claims which constitute the counts here involved, and no other authorities have been cited upon this phase of appellant's contentions. It was, therefore, not necessary for the Board of Appeals to consider the case in connection with its decision of the instant case, even though it was called to its attention, and appellant's assignment of error upon this point is overruled.

376

We next consider appellant's contention that there is no interference, in fact, because of the conceded structural differences in thè respective devices and in the processes normally carried out by means of those devices.

■■ The general rule, so familiar as to require no citation of authority in its support, is that in interference proceedings the counts are to be given the broadest construction of which they. are reasonably capable. Another rule, equally as familiar, is that limitations expressed in the counts may not be disregarded. It is not always easy to harmonize these two rules and apply them practically. However, we do not find it necessary in the instant case to discuss these rules in detail.

■ This is a case in which the contest is between a patent on the one hand and an application on the other. In such cases, this court, following the doctrine announced in various decisions of the Court of Appeals of the District of Columbia, our predecessor in jurisdiction over appeals from the United States Patent Office, has repeatedly held that where there is ambiguity in a count of the interference, such count must be construed in the light of and given the meaning which it had in the source where it originated. Sweetland v. Cole, 53 F.(2d) 709, 19 C. C. P. A. 751; Thompson v. Pettis, 44 F.(2d) 420, 18 C. C. P. A. 755; Moore v. Greene, 48 F.(2d) 960, 18 C. C. P. A. 1317, with their respective citations. It is, therefore, necessary here, since the counts at issue are found to be supported, in a literal sense, by the Dubbs disclosures, to determine whether they are so ambiguous as to require their being tested solely by the Doherty patent.

It was said by this court in the case of Knauss et al. v. Anderson, 63 F.(2d) 450, 451, 20 C. C. P. A. 914, 917: " * * * The fact that the tribunals of the Patent Office, composed of experts, differ as to the meaning [of the counts] is evidence at least of ambiguity in the phrase [the one there involved], °and, when ambiguity is present, the count should be given the meaning which it obviously has in the source where it originated. * * * "

It has been heretofore stated that the Examiner of Interferences and the Board of Appeals reached different conclusions in the instant case. A careful reading of their respective opinions, however, does not disclose any express statement that either tribunal looked upon the counts as being ambiguous. Their differences of opinion were only as to the operativeness of the Dubbs device for the purposes sought in the Doherty device, and appellant does not, in fact, argue before us that the counts are in themselves ambiguous.

We are unable to discern any ambiguity which would seem to justify the application of the rule stated in the cases cited, supra.

We are, therefore, led to the conclusion that we should not narrow the natural interpretation of the counts by resort to the Doherty specification.

In Writer v. Kiwad, 63 F.(2d) 259, 262, 20 C. C. P. A. 869, 874, this court, citing authorities and suggesting possible differences in infringement and interference proceedings, said: " * * * In interference cases, if the counts are not ambiguous, they should be given the broadest interpretation which they will reasonably support, and a party who deliberately elects to claim his invention broadly is not in a position to insist that limitations be read into them for the purpose of avoiding the issue of priority."

There is left to be considered only the question of operativeness which was, in fact, practically the sole issue discussed at length by either of the tribunals of the Patent Office.

This is to be determined largely from the proofs taken. The record is a voluminous one, but, in the final analysis, the testimony of the witness Perdew is substantially all which appellant offered that is of value upon this issue.

The Examiner of Interferences seems to have attributed some importance to the fact that "though many Dubbs plants are in operation, there is no testimony of an actual operation of a plant as called for by the counts." The Board of Appeals, suggesting that "in regard to the question of inoperativeness when raised by a party, it is in some measure incumbent upon the party making the allegation to furnish evidence indicative of this condition," proceeded to analyze the testimony and found it insufficient to negative operativeness in Dubbs.

From our own examination of the testimony and study of the respective devices, we do not feel justified in overruling the findings of the board in this respect.

In the case of Williams v. Handschiegl, 48 F.(2d) 395, 397, 18 C. C. P. A. 1176, 1181, we said: "It was incumbent upon appellant [who there made the issue of inoperativeness] to establish that appellee's method * * · * would not actually perform the functions claimed for it. Proof that it is imperfect in operation, that it performs its functions in a crude way, or that it does not meet

commercial requirements, is not sufficient to establish inoperativeness in a patentable sense."

To review the evidence in detail would unduly lengthen this opinion without any compensating interest.

Mr. Perdew does not really claim to have made any test of a Dubbs device, by circulating residuum through the heating and cracking unit, to determine how long the process could be continued without choking the passages with carbon, but testifies as to an instance described by the Board of Appeals as "an abnormal case where residuum was unintentionally circulated." We agree with the board that "there is no very specific time lim-

it established which can be considered as rendering the device inoperative." Inoperativeness is, of course, primarily a question of fact and only factual testimony is of any material value in determining it.

The counts are broad and unambiguous. The Dubbs disclosures support them, at least in terms. Dubbs was within his legal rights in making them, and inoperativeness to an extent which would justify a holding against Dubbs in an interference case is not satisfactorily shown.

The decision of the Board of Appeals is affirmed.

Affirmed.