29 C.C.P.A.(Patents)

### LAVIN v. PIEROTTI.

Patent Appeals No. 4633.

Court of Customs and Patent Appeals.
July 6, 1942.

Robert F. Whitehead, of Washington, D. C. (A. Yates Dowell, of Washington, D. C., of counsel), for appellant.

John M. Mason, of Washington, D. C. (Manfred M. Weinberg and M. M. Warren, both of Oakland, Cal., of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal in an interference proceeding from the decision of the Board of

Appeals of the United States Patent Office affirming the decision of the Examiner of Interferences awarding priority of invention of the subject matter defined in the single count in issue to appellee.

The invention relates to a refrigerating or cooling system for automobiles, and is sufficiently defined in the involved count which reads:

"1. The combination with an automobile powered by an internal combustion engine, of a conduit connected to the intake manifold of said engine and a refrigeration system carried by said automobile; said system comprising a condenser, an evaporator and a device for circulating refrigerant through said system; said device comprising a casing communicating through said conduit with said intake manifold, a member in said casing subjected alternately to the suction effect prevailing in said manifold and to atmospheric pressure to reciprocate said member, and means for converting the reciprocations of said member into a pressure sufficient to cause liquefaction of the refrigerant in said condenser."

The interference is between appellant's application No. 202,947, filed April 19, 1938, and appellee's application No. 226,-403, filed August 23, 1938.

During the motion period, appellee Pierotti moved to dissolve the interference on the ground that appellant's disclosure was inoperative. Appellee also moved to shift the burden of proof on the ground that his involved application was a continuation of a parent application, No. 97,937, filed August 26, 1936, it being alleged that the parent application disclosed the involved invention, and that, therefore, appellee was entitled to the filing date of that application for conception and constructive reduction to practice.

The Primary Examiner denied both motions, holding, on appellee's motion to dissolve the interference, that appellant's disclosure was operative, and, on appellee's motion to shift the burden of proof, that, in effect, his involved application was not a continuation, or a continuation-in-part, of his earlier filed application; that all claims in his earlier filed application had been finally rejected on the ground that there was "not a sufficient disclosure [therein] to teach the public how to use the suction effect of an automobile engine to operatively drive a compressor";

that, as no appeal was taken from the examiner's final decision in that case, such decision became final and conclusive; that appellee was thereafter estopped from claiming that his earlier filed application disclosed an operative structure; and that, therefore, appellee was not entitled to the filing date of his earlier filed application for constructive reduction to practice of the invention defined by the involved count. In support of his decision, the Primary Examiner cited the cases of Lee et al. v. Vreeland, 49 App.D.C. 200, 262 F. 654, and Skinner v. Swartwout, 1922 C.D. 26.

It appears from the record that on August 2, 1938, certain amendments to appellee's earlier filed application, apparently presented for the purpose of disclosing an operative structure, were rejected by the Primary Examiner as involving new matter; that all of the claims in appellee's earlier filed application were finally rejected by the Primary Examiner on the ground that appellee did not disclose in that application an operative structure; that no appeal was taken from that decision of the examiner; and that appellee's application, filed August 26, 1936, became abandoned.

Appellant introduced no evidence and is, therefore, confined to his filing date (April 19, 1938) for conception and constructive reduction to practice.

Appellee introduced evidence for the purpose of establishing that he conceived the invention and reduced it to practice prior to appellant's filing date, and also for the purpose of establishing that the disclosure in appellant's application was not operative.

In his decision, the Examiner of Interferences held that appellee was not entitled to the filing date of his earlier application for constructive reduction to practice. He also held that although evidence was introduced by appellee for the purpose of establishing that appellant's disclosure was inoperative, such evidence was not factual in character, but, on the contrary, was merely "expert opinion testimony based on theoretical considerations," and that, as no inter partes tests were made of appellant's disclosed structure, appellee had failed to establish that appellant's disclosure was inoperative. Thereupon, the Examiner of Interferences considered the evidence submitted by appellee for the pur-

pose of establishing that he conceived the involved invention and reduced it to practice prior to appellant's filing date, and held that it was sufficient to establish such facts, and, accordingly, awarded priority of invention to appellee. The Examiner of Interferences has so accurately and fully recited the evidence submitted by appellee with regard to his alleged reduction to practice of the involved invention, that we deem it proper to quote his statement with regard thereto:

"Pierotti, who is an automobile dealer in Oakland, California, is corroborated inter alia by George Thomas, a refrigeration mechanic; by Manfred Weinberg, a patent attorney associated with Joseph B. Gardner, and by Mr. Gardner [counsel for appellee].

"Pierotti's story in brief is that in 1928 he organized a company for the manufacture for use in motor trucks of refrigeration apparatus powered through a takeoff from the transmission, that the apparatus, especially the mechanical drive, was expensive and cumbersome and as a consequence when the depression came the company had to dissolve, that in 1935 he conceived the idea of a less expensive compressor to be operated by the suction of the intake manifold, that in the first part of 1936 he disclosed the idea to Thomas, and that under his direction Thomas built an apparatus which was successfully tested in June 1936.

"From Thomas' testimony the following is gathered: About the first of June 1936 Pierotti disclosed the idea to him and showed him a compressor which he was to adapt to the idea and apply to refrigerating apparatus for testing. Thomas redesigned the compressor and a few days later installed it on a refrigeration equipped Miller meat packing truck by substituting the compressor for the truck's compressor and hooking it up to the intake manifold * * *. The engine was started and the compressor was operated for about three hours * * *, with the truck both stationary and in motion, and it is positively stated that the coils frosted * * *. Because the truck did not belong to Pierotti the compressor was removed the same day, but on several occasions in the ensuing weeks it was again tested. For the next test, which took place in June, Thomas built a complete cooling unit, installed it in a Lincoln Zephyr automobile with the same compressor and operated it to San Jose and back * * *. On this trip it is stated the unit worked continuously and the coils 'frosted up solid' * * *. The next test took place no later than early August 1936 and was staged for the benefit of Mr. Gardner and Mr. Weinberg * * * who had been consulted in the meantime. On this occasion which took place in Thomas' back yard and involved a stationary test the unit was operated off the intake manifold of a Ford pick-up truck and the coils again frosted. Thomas testified in sufficient detail as to the structure of the compressor and as to the type of reversing valve used in the tests aforementioned to warrant the conclusion that they corresponded to the operative device shown in Pierotti's involved application * * *.

"Weinberg testified in great detail regarding the test conducted in the back yard of Thomas' residence. This test took place over a period of a half hour with the car stationary and the unit on the ground adjacent the car. The engine was kept running during this period and the coils became frosted. Weinberg was positive the reversing valve was of the oscilating type and he was equally positive the test took place August 1, 1936. With respect to that date being the date of the test there has been submitted very convincing cumulative testimony by Gardner, but there is no need for further discussion thereon."

In holding that that evidence was sufficient to establish reduction to practice by appellee, the Examiner of Interferences stated that as the "cooling coils frosted" during the tests referred to, some cooling must have been produced, and that, as the involved count does not specify any particular degree of cooling, the evidence was sufficient to warrant a holding that appellee had successfully reduced the invention to practice at least as early as August 1, 1936.

In its decision, the Board of Appeals held that the evidence introduced by appellee was insufficient to establish conception of the invention and reduction of it to practice prior to appellant's filing date. In so holding, the board stated that there was no corroborative evidence to establish that, in the tests to which appellee's device had been subjected, sufficient refrigeration had been produced to cool the

air within the motor vehicles involved in the tests and referred to in the decision of the Examiner of Interferences. Relative to the issue of the operativeness of the device disclosed in appellant's application, the board stated that it was in considerable doubt as to whether it could be held that appellant's device was operative, and that it did not consider it necessary to make a definite ruling in that regard as it deemed "it sufficient to hold that, if it should be later decided that the disclosure of the earlier Pierotti application is in-, operative, we consider that the same ruling should be made with respect to the Lavin disclosure. We are fully convinced that any comparison between the two disclosures on the question of operability should be decided favorably to Pierotti." In awarding priority of invention to appellee, the board held that appellee was entitled to the filing date of his earlier application for constructive reduction to practice. In so holding, the board said:

"* * * It may be true that the examiner's action was proper in holding that the amendment to the drawing, which was proposed in that application, involved new matter, but it does not follow that one skilled in the art would not have been able to have remedied the difficulty in some manner without the exercise of invention. We are convinced that it would have been a simple matter for one familiar with reciprocating motors to have provided, by employing only ordinary skill, an operative reversing valve arrangement which would have properly controlled the vacuum and air in such a manner as to have caused the piston to reciprocate in the proper manner.

*"We do not consider, therefore, that merely because the party Pierotti chose to file another application with a disclosure of a specific valve system, which perhaps could not have been inserted in the first application, is sufficient reason for holding that the first case would not have supported a valid patent."* (Italics supplied.)

In its decision denying appellant's petition for rehearing, the board stated, in substance, that the final decision of the Primary Examiner in the ex parte prosecution of appellee's earlier filed application, holding that that application did not disclose an operative structure and rejecting all of the claims therein on that ground, was not final and conclusive against appellee, and that, therefore, the board

had the power to consider the disclosure in appellee's earlier filed application, in a proceeding such as that here involved, for the purpose of determining whether or not it disclosed an operative structure. In other words, the board held that the doctrine of res adjudicata was not applicable to the final decision of the Primary Examiner in the ex parte prosecution of appellee's earlier filed application, although no appeal was taken from that decision.

Relative to the decision of the United States Court of Appeals for the District of Columbia in the case of Hemphill Co. v. Coe, 74 App.D.C. 123, 121 F.2d 897, wherein it was held that a decision by this court, holding that a device disclosed in an application was inoperative, was final and conclusive, and that issue was res adjudicata and could not be raised in any subsequent proceeding, the board stated that the issue in that case differed from the issue in the instant case in that in the instant case appellee, instead of appealing . from the final decision of the Primary Examiner in the ex parte prosecution of his earlier filed application, "promptly filed another application as a continuation-in-part in order to provide a more detailed disclosure."

■ That the doctrine of res adjudicata is applicable to proceedings of a judicial character in the Patent Office, is no longer an open question. Williams Oil-O-Matic Heating Corporation v. Butler Co., 39 F.2d 693, 17 C.C.P.A. (Patents) 934, and cases therein cited; In re Becker, 74 F.2d 306, 22 C.C.P.A. (Patents) 843.

■ The final decision of the Primary Examiner in the ex parte prosecution of appellee's earlier filed patent application was obviously judicial in character, and, as no appeal was taken therefrom, it became final and conclusive not only against appellee but also against the Board of Appeals as to the issue—the operativeness of appellee's disclosure—therein determined.

■ As it has been finally determined that appellee's earlier filed application did not disclose an operative structure and, therefore, was not allowable, appellee is not entitled to the filing date of that application for constructive reduction to practice of the involved invention. Lee v. Vreeland, supra; Interference Law and Practice by Rivise and Caesar, Volume 1, sections 13 and 159 and cases cited. Appellee, therefore, is the junior party and

the burden was upon him to establish priority of invention by a preponderance of the evidence.

The next question requiring our consideration is whether the evidence introduced by appellee is sufficient to establish that the disclosure in appellant's application is inoperative.

In his decision holding appellant's device to be operative, the Primary Examiner discussed appellant's disclosure in considerable detail.

The Examiner of Interferences correctly stated in his decision that the only evidence offered by appellee for the purpose of establishing the inoperativeness of appellant's device was "expert testimony based on theoretical considerations," and that no inter partes tests were made by appellee or his witnesses for the purpose of determining whether appellant's apparatus was operative. Furthermore, although appellee's witnesses Oscar C. Johnson and Harvey Hansen testified that, in their opinion, the disclosure in appellant's application was inoperative, they also testified that they had neither constructed nor tested a device like that disclosed by appellant.

■ We are in agreement, therefore, with the views expressed by the Examiner of Interferences that the evidence is wholly insufficient to warrant a holding that appellant's device is inoperative. Doherty v. Dubbs, 68 F.2d 373, 21 C.C.P.A. (Patents) 807.

We come now to a consideration of the evidence introduced by appellee for the purpose of establishing conception of the involved invention and reduction of it to practice prior to appellant's filing date—April 19, 1938. As that evidence has been fully stated in the quoted excerpt from the decision of the Examiner of Interferences, we need not enter upon a lengthy discussion of it here.

The Examiner of Interferences was of opinion that as the "cooling coils frosted" during the tests regarding which the witnesses testified, some cooling must have been produced.

■ The difficulty with that holding of the Examiner of Interferences is, as we see it, that there is no corroborative evidence establishing that in any of the tests to which appellee's apparatus was subjected the air within the automotive vehicles was cooled, nor is there any evidence that

such refrigeration as was produced was sufficient to cool the air in such vehicles. We are in agreement with the conclusion reached by the Board of Appeals that the evidence is wholly insufficient to establish that such refrigeration as was produced during those tests was sufficient to accomplish the purpose for which appellee's apparatus was intended.

For the reasons stated, the decision of the Board of Appeals, awarding priority of the invention defined in the count in issue to appellee, is reversed.

Reversed.

LENROOT, J., did not participate in the foregoing decision.

BLAND, Associate Judge (dissenting).

This case presents a very close question for decision, but I have sufficient doubt about the correctness of the conclusion of the majority in reversing the decision of the board that I am compelled to dissent.

In addition to that portion of the board's decision which the majority quoted, I quote the following: "The count reads upon that application [the earlier Pierotti application] and the only difficulty was that the valve construction of the motor apparently was not operative. * * *"

Then followed what the majority quoted. It was therein held by the board that one skilled in the art could have remedied the difficulty without the exercise of inventive genius.

Upon petition for reconsideration, the board, on the subject of estoppel, said in part:

"* * * The party Pierotti, in his earlier application, when notified that the disclosure was insufficient, promptly filed another application as a continuation-in-part in order to provide a more detailed disclosure. In the Hemphill case, the applicant not only continued the prosecution through the Office but appealed to the Court. When this failed, he filed another application and presented the same question to another Court. This, on its face, would seem to be an objectionable procedure.

"It is believed, however, that where some question arises as to the insufficiency of an application, an applicant should be encouraged, rather than penalized, for promptly filing a more complete application, particu-

larly as the chance of a priority question being involved, according to the law of averages, is relatively slight. It is our opinion, therefore, that the party Pierotti is not estopped from a consideration of his earlier application on its merits."

The count was suggested for interference purposes by the Primary Examiner. It is very broad—so broad that if the original disclosure of Pierotti was inoperative, the count calls for an inoperative device. The examiner found the count allowable, and the board found that it read squarely upon the original disclosure of Pierotti.

Pierotti was not concerned with a reversing valve per se. Such valves were old in the art, as shown by the instant record. The invention of the count suggested by the examiner is in the broad combination of elements. It was unnecessary for Pierotti to have explained in his later application the working of the valve, which was old in the art and whose functions were well understood by everyone familiar with such valves. He, in the continuing application, met the objection raised by the Patent Office by explaining the working of the valve which the Patent Office must have well understood, and that brought about the holding that his explanation was new matter and that he disclosed an inoperative structure without the new matter. The board thought that an applicant under such circumstances should be encouraged rather than penalized. So do I. Such super-technical holdings under circumstances such as are at bar are unjustifiable.

I think the board was right in holding that under such circumstances, for interference purposes at least, the clear disclosure of all the elements of this count in the original application of Pierotti ought to be regarded as sufficient to constitute a reduction to practice. Obviously, Lavin is not the first inventor. Is he to obtain this count in his application?

It seems to me that regardless of the correctness of the conclusion as to when an applicant is estopped by his failure to appeal from a Patent Office ruling, the disclosure of the original application should be sufficient for the purpose of interference. In other words, he prevents the second inventor from getting a claim to a structure which he did not first invent.

If Pierotti had won this interference, it would not necessarily follow that the doctrine of estoppel might be applied to him in the ex parte consideration of his application. If he were held estopped under such circumstances, he would have the right to appeal and present the issue to a court.

I think the decision of the board was right, and it should be affirmed.