MaetiN, Judge,
delivered the opinion of the court:
This is an appeal from the decision of the Board of Appeals of the United States Patent Office, dated July 31, 1958, affirming the rejection of claims 5, 6 and 8, all the claims remaining in appellant’s application for a patent, Serial No. 666,183, filed April 30, 1946, relating to “Improvements in and Relating to the Production of Energy through Nuclear Fission.” Priority, based on an application filed in France on April 30, 1940, is claimed under the Boykin Act (Public Law 690, 79th Congress).
Claims 6 and 8, illustrative of the appealed claims, appear as follows:
6. A method for the improvement of the efficiency of methods and devices for the production of energy through nuclear fission of uranium, by means of a divergent chain reaction of neutrons, said method consisting in making use, for the reaction, of the uranimum element in a form in which the proportion of isotope 235 is about five times that of the said isotope in normally obtained uranium and the slowing down element is heavy water.
8. In a device for the production of energy through nuclear fission of uranium essentially formed of a mass of uranium susceptible to give rise under the action of neutrons to an emission of neutrons in a chain, the said mass being enclosed in a neutron reflecting envelope and comprising in its midst, an element for slowing down the neutrons and part at least of said neutrons to approximate thermal equilibrium with the mass, said element being in an amount less than that which hinders unlimited development of chain in a divergent geometric progression, and a further element absorbing the slowed down neutrons in a proportion which becomes higher with respect to the absorption by the uranium when the temperature rises, wherein the uranium used contains a proportion of isotope 235 of uranium higher than that existing in uranium as found in nature.
Tbe invention allegedly disclosed in this application pertains to means for increasing the efficiency of nuclear reactors and chain reaction processes producing energy by the fission of uranium nuclei, *724 the means consisting in the provision of a uranium fuel which has been enriched in the proportion of uranium isotope 235, as compared with that ordinarily obtained. Such enrichment is said to create conditions favorable to the propagation of a diverging or self-sustaining chain reaction, which facilitates the continuous production of energy for industrial or military purposes.
The materials disclosed in the application here on appeal are said to be useful in combination with the “dispositions” shown in certain other of appellants’ applications, referred to in blank in the specification here in issue. Appellants assert that the disclosures of prior copending United States applications Serial No. 328,160 and Serial No. 328,373, hereinafter referred to as U.S. I and U.S. II, respectively, were intended by such blank reference and should be incorporated with the disclosure of the application on appeal in assaying its sufficiency.
The U.S. I application provides for a device for the production of energy (a nuclear reactor) including a mass of uranium fuel and certain elements intended to control the rate of energy liberation to avoid the possibility of explosion. Such latter elements comprise absorber and moderator materials, designed, respectively, to absorb and slow down the neutrons which propagate the chain reaction. The complete system referred to above is enclosed in a “diffusing” or reflecting “envelope” in order to prevent the escape of the neutrons emitted by nuclear fission. The diverging chain reaction is said to occur only when the reacting mass exceeds a certain threshold quantity, termed the critical mass. This mass is dependent upon the relative amounts of the components of the reacting system and the relative probabilities of neutron release from a fissionable nucleus. While no quantities of fuel, absorber or moderator materials are disclosed in tlfis application, the specification avers that “since science presently has at its disposal means for measuring the multiplication of neutrons, it will be easy to estimate the value of the critical mass by progressive experiments.”
The U.S. II application discloses several alternative means for controlling the chain reaction by interruptions thereof comprising periodic introduction or removal from the device of fissionable material or absorber material or periodic approach and separation of parts of the uranium mass. Additionally, this application suggests periodic disengagement of the external reflecting envelope as a reaction control mechanism.
These prior filed applications, while vested in, and hence under the control of, the Alien Property Custodian, were rejected on the ground that they did not contain disclosures sufficient to satisfy the *725 requirements of E.S. 4888.[1] Those rejections were affirmed by the Board of Appeals and no appeals' were taken therefrom nor appropriate action had before the District Court for the District of Columbia.
All the claims here on appeal have been rejected on the ground that the specification of the present application, together with the disclosures of U.S. I and II, is insufficient to teach those skilled in the art how to make and use the invention, as required by 35 U.S.C. 112, which, in 1953, replaced E.S. 4888. Other grounds of rejection have been made, but in the view we take of the case, it is unnecessary to consider more than the one above mentioned.
Appellants have here predicated their contention of patentability of claims 5 and 8 entirely, and claim 6 alternatively, upon the incorporation of the disclosures of U.S. I and II into the application on appeal. They rely on the disclosures of the previous applications as the means of showing the operability of the invention described and claimed in the present application. The instant application discloses only the use of an enriched fuel source and refers to the prior filed applications for disclosure of the devices and methods in which such fuel shall be utilized.
Assuming, arguendo, that the disclosures of U.S. I and U.S. II may be properly incorporated in the disclosure of the application on appeal by the reference in blank therein, the two prior disclosures here involved cannot be used to introduce an operative disclosure because of the previous final adjudications as to their insufficiency. While in certain situations a plurality of disclosures may, like pieces of a jigsaw puzzle fitted together, create a new composite disclosure raising a distinctly different issue of sufficiency, wherein the prior applications, although adjudicated, might be considered on their merits, such is not the present case. The disclosures of U.S. I and II in no sense create a new combination with each other or with the disclosure of the instant application, but in reality, if they could do anything, they alone could provide the only possible disclosure to support the contention that an operable invention has been disclosed.
*726 While tbe wording of the section of the Patent Act of 1952 corresponding to E.S. 4888, viz 35 U.S.C. 112,[2] is not identical therewith, there is no material difference between the two provisions with respect to the requirement pertaining to the sufficiency of disclosure of an application. Consequently, a final holding that a disclosure is insufficient to comply with E.S. 4888 necessarily involves a holding of insufficiency under 35 U.S.C. 112, and the prior adjudications as to the insufficiency of disclosure of U.S. applications I or II are, therefore, binding upon this court.
Under circumstances similar to those here involved, this court and the Court of Appeals for the District of Columbia have held that a final holding of insufficiency of disclosure cannot be attacked in a subsequent proceeding. Lavin v. Pierotti, 29 CCPA 1235, 129 F. 2d 883, 54 USPQ 400; Whittier v. Borchardt, 33 CCPA 1023, 154 F. 2d 522, 69 USPQ 382; Hemphill Company v. Coe, 74 App. D.C. 123, 121 F. 2d 897, 49 USPQ 484.
Although the Board of Appeals, in its decision here on review, did not specifically refer to the effect of the earlier decisions relative to U.S. I and II, it did affirm the examiner’s rejection “* * * for the reasons stated by him in his answer * * Such answer clearly noted that the determination of the sufficiency of disclosure of U.S. I and II was foreclosed by the prior adjudications.
Appellants’ response before the examiner, to the application of the principle of res judicata in this case as to the sufficiency of U.S. I and II was that the two previous applications were improperly prosecuted by the Alien Property Custodian and that, therefore, appellants should not be bound by the adjudications of those applications. If we were to follow appellants’ contention, every patent application prosecuted by the Alien Property Custodian and every other action taken by this official would be in perpetual jeopardy, which would be intolerable. The Alien Property Custodian was the vested owner of the applications at the time of the prior judgments and his actions with respect thereto are therefore binding on appellants, who are his successors in title.
*727 The specification of the pending application alone, without the incorporation of the previous applications, clearly does not comply with the provisions of 35 U.S.C. 112. In other words, there is no statement in the pending application “of the manner and process of mairing and using it [the invention], in such full, clear, concise, and exact terms as to enable any person skilled in the art * * * to make and use the same * * *.” There is a recitation of the “known” method to “ensure with certainty the propagation of the fissions” by interposing “on the path of the new neutrons emitted and before their eventual meeting points with new uranium nuclei, one or more light or very light elements such as, for instance, hydrogen which may be in the form of water, or deuterium * * Further, there is a statement that the use of uranium enriched in isotope 235 may be obtained through any known means, for instance by thermic diffusion. There is nothing in the specification to teach one skilled in the art how to bring about these desired results. Without the benefit of the disclosures of the two previous applications, the pending application merely states what was allegedly known in the art, and that better results may be obtained by the use of enriched uranium. The specification is entirely devoid of any recitation of methods or means of making the alleged invention operable. In view of the above, we do not believe that the specification of the pending application contains an operative disclosure.
Appellants urge that even though the pending application alone might not support claims 5 and 8, its disclosure does support claim 6. We find nothing in the specification to sustain this contention. Even though claim 6 recites a method for the improvement of the production of energy through nuclear fission of uranium by means of a divergent chain reaction of neutrons, using uranium enriched in isotope 235, there is nothing in the specification which would teach one skilled in the art how to proceed. The specification merely recites the results of the use of the enriched uranium without specifying the means to attain these results.
It should be noted that the affidavits of the renowned nuclear physicists introduced by appellants fail to state that the disclosure of the instant application alone would teach the affiants or others skilled in the art to use the method set forth in claim 6, or as a matter of fact, to use the method set forth in claim 5 or to make the device set forth in claim 8.
In view of the foregoing, it is unnecessary to discuss the other contentions of the appellants. The decision of the Board of Appeals is affirmed.
*728 WoRlex, C.J., did not participate in this decision because of illness.

 R.S. 4888. Application for patent; description; specification and claim.
Before any inventor or discoverer shall receive a patent for his invention or discovery he shall malee application therefor, in writing, to the Commissioner of Patents, and shall file in the Patent Office a written description of the same, and of the manner and process of making, constructing, compounding, and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art or science to which it appertains, or with which it is most nearly connected, to make, construct, compound, and use the same; and in case of a machine, he shall explain the principle thereof, and the best mode in which he has contemplated applying that principle, so as to distinguish it from other inventions; and he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery. The specification and claim shall be signed by the inventor. No plant patent shall be declared invalid on the ground of noncompliance with this section if the description is made as complete as is reasonably possible.

 § 112. Specification—
The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out bis invention.
The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as bis invention.
An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts in support thereof.