49 CCPA

**Walter H. RODIN, Appellant,**

v.

**Thomas R. SPALDING, Appellee.**

**Patent Appeal No. 6730.**

United States Court of Customs
and Patent Appeals.

Jan. 12, 1962.

Rehearing Denied March 9, 1962.

Walter H. Rodin, pro se.

Rayson P. Morris, New York City, for appellee.

Before WORLEY, Chief Judge, RICH, MARTIN, and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

SMITH, Judge.

This appeal, prosecuted *pro se* by the junior party Rodin, is taken from an adverse decision of the Board of Patent Interferences rendered May 17, 1960. The appellant, in a communication attached to his Notice of Appeal dated July 11, 1960, has stated what he asserts to be the "errors" in the appealed decision. These "errors" are further elaborated upon in his brief under the caption "Errors Relied Upon." These "errors" relate to various matters which cannot be determined on the present record.

While it is rather difficult to understand the basis for all of the "errors" recited by appellant,[1] it is believed that there are two issues for decision by this court: 1) Do the proofs of the junior party, Rodin, overcome the filing date of the senior party, and 2) does the senior party disclose an operative structure which supports his right to make the counts in interference?

The background of the present interference was correctly stated by the Board of Patent Interferences in its decision of May 17, 1960, as follows:

"This interference relates to a system for detecting hot journal boxes of railroad cars involving the

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provi-

sions of Section 294(d), Title 28, United States Code.

1. Neither appellant nor appellee appeared for oral argument.

use of a shielded radioactive material which is unmasked by the action of heat generated in an over heating box so that an indicator or alarm system located alongside of the track is actuated when the box passes by it.

"The senior party Thomas R. Spalding is involved in this interference upon the basis of an application Serial No. 448,264, filed August 6, 1954, and assigned to the International Telephone and Telegraph Corporation.

"The junior party, Walter H. Rodin, is involved in this interference upon the basis of an application, Serial No. 631,007, filed December 27, 1956.

"This interference was declared with a single count as the issue. As a result of a motion by the party Spalding in which it was pointed out that the limitation appearing in the count (now known as count 1) that the "shield means" be "in contact with the journal box" was not accurate as to the disclosure of either party; count 1 was stricken and counts 2 and 3, which were proposed by the party Spalding and correspond to claims 10 and 11 of his application, were added, so that the issue now consists of these two counts."

The counts involved are:

"2. In a railroad car, a journal box, a body of radioactive material secured to a portion of the journal box, shield means for absorbing emanations from the radioactive material, means for securing the shield means super-imposed over the body of radioactive material and secured to said journal box under normal temperature, said securing means including temperature-responsive means to release the shield upon reaching of a predetermined temperature by the journal box; whereby abnormal heating of the journal box may be detected by a radioactivity detector adjacent its path.

"3. In a railroad car, a journal box, a body of radioactive material positioned on said journal box, shield means for absorbing emanations from the radioactive material, and means for securing said shield means over said radioactive material in heat transfer relation to said journal box under normal temperature conditions, said securing means including temperature responsive means to release the shield upon said journal box reaching a predetermined temperature to expose said radioactive material, whereby abnormal heating of said journal box may be detected by a radioactivity detector adjacent its path."

For appellant, as the junior party, to prevail in this interference, it is necessary for him to sustain the burden of proof and overcome with corroborated testimony the senior party's *prima facie* evidence of priority. Patent Office Rule 257, 35 U.S.C.A.Appendix. Vandenberg v. Reynolds, 268 F.2d 744, 46 CCPA 938. Appellant has attempted to do so by the testimony of himself and his witness, Raymond Feddern, and by attacking the operability of the disclosures in the senior party's application. The senior party has taken no testimony and relies upon his filing date of August 6, 1954.

While the issue of operability of the Spalding disclosure is technically an *ex parte* matter relating to patentability and thus is not properly before the court, Glass v. De Roo et al., 239 F.2d 402, 44 CCPA 723, we are, under the particular circumstances of this case, constrained to treat it as the Board of Patent Interferences seems to have done, as an "ancillary" matter bearing on the right of the senior party to make the count.

A full and careful review of the entire record on behalf of appellant fails to reveal corroborated testimony establishing a reduction to practice of his invention prior to August 6, 1954 and likewise

fails to reveal any evidence to support appellant's position as to the inoperability of Spalding's disclosure.

■ The testimony on behalf of appellant, when considered in the light most favorable to appellant, establishes that "the designing of a device was done in 1949 while discussing the peaceful application of atomic energy with Max Rodin, a scientist at Argonne National Laboratory." This "device" is not specifically described except as "the device described in this interference." Appellant's testimony refers to installation of "my devices" "on the Rock Island Railroad's Chicago to Denver run" but these devices are not further identified, nor was any proof of this installation offered, other than in appellant's uncorroborated testimony. The activity of appellant in connection with these "devices" is set forth in his deposition as follows:

"During March, 1952, I obtained the services of Ray Feddern, a model maker, to assist in the fabricating on an operating model of this device. Further assistance in making and testing this device was obtained by Messrs. Philip Copperstein and Lidio Filippo. Besides heat tests, a roadability test required the device remaining secured on the bottom of an automobile axle housing. After successfully passing these tests on April 6, 1952, the device was offered for sale to all railroads at ten cents each. Mr. Loftis, Director of Research of the Rock Island Railroad exhibited an interest in helping to select materials for the assembling of this device onto railcars. Others that also either assisted or attempted to assist in the solving of this problem of overheated railcar journals by using this detecting device which requires installation on every railcar to realize its commercial value included: Mr. Wighton, General Supt. of Communications of the Chicago, Burlington Railroad; Mr. Morrison of the Illinois Central Railroad; Mr. Patchell, V. P. of R & D of the Pennsylvania Railroad; Mr. McKoy, Purchasing Agent of the Chicago, Milwaukee, and St. Paul; Mr. Schulte, Mechanical Div. Chief of the Santa Fe Railroad; Mr. Baker, Supr. Electronics of the Baltimore and Ohio Railroad; Mr. Crane, Research Engineer of the Southern Railway System; Mr. Alvung, Mechanical Engineer of the Chicago Great Western Railways etc."

Of the foregoing named persons, only the testimony of Feddern was taken. After stating his qualifications, Feddern's entire testimony is as follows:

"When did you construct this device (see isometric drawing, Exhibit B) for Walter Rodin? A. Walter Rodin requested that I construct the device described in his patent application No. 631,007. After lengthy discussions of appropriate materials and methods of manufacture, the ordered devices were delivered on April 5, 1952. At which time, Mr. Rodin and I performed mock tests of simulated service conditions on sleeve and roller bearings successfully in my shop."

From the foregoing it will be seen that there is no identification of the "device" made by Feddern and tested by Feddern and appellant, except for the reference to "isometric drawing, Exhibit B" in the Feddern testimony and Feddern's statement that "Walter Rodin requested that I construct the device described in his patent application No. 631,007."

The nature of the "tests" performed on April 6, 1952 is not established in the testimony produced by Rodin in sufficient particularity to show operation of the device beyond the probability of failure. In Field v. Knowles, 183 F.2d 593, 601, 37 CCPA 1211, 1222, this court stated the legal requirements necessary to establish an actual reduction to practice as follows:

" * * * To constitute an actual reduction to practice of a machine, the device must be completed in an operative form capable of success-

fully demonstrating its practical utility in its intended field of use. Ocumpaugh v. Norton, 25 App.D.C. 90; Van Auken v. Cummings, 49 F.2d 490, 18 C.C.P.A., Patents, 1250. Unless the device is of such a nature that by its very simplicity its practical operativeness is manifest, Mason v. Hepburn, 13 App.D.C. 86, 89, the machine must be tested under actual working conditions, Smith v. Nevin, 73 F.2d 940, 22 C.C.P.A., Patents, 748, in such a way as to demonstrate its practical utility for its intended purpose, Sydeman v. Thoma, 32 App.D.C. 362, 373; Feldmeier et al. v. Mojonnier, 97 F.2d 124, 25 C.C.P.A., Patents, 1158, beyond probability of failure, Taylor v. Swingle, 136 F.2d 914, 30 C.C.P.A., Patents, 1219. Actual performance is required of the funtion for which the machine is intended with a quality, extent, and character of operation sufficient to indicate its utility in the environment in which it is contemplated to be useful. Lavin v. Pierotti, supra [129 F.2d 883, 29 C.C.P.A., Patents, 1235]; Steenstrup v. Heath, 95 F.2d 514, 517; 25 C.C.P.A., Patents, 981, 986; Van Auken v. Cummings, supra."

The testimony of Rodin and Feddern does not establish a reduction to practice of Rodin's "device" which meets the tests set forth in the above quoted portion of the Field decision. We, therefore, agree with the Board of Patent Interferences that "The junior party Rodin has not overcome the filing date of the senior party by corroborated testimony."

Appellant urges that the June 24, 1957 amendment of the Spalding application (which added the claims which now comprise the counts) contained new matter not supported by the disclosure. Appellant bases his objections to the amendment on the fact that Spalding's original drawing shows the shielding capsule placed within the journal box. From this illustration of Spalding's invention, appellant argues that Spalding's invention is inoperable as disclosed since it requires a dangerously high level of radioactive source material to penetrate the steel-walled journal box. From this appellant argues that the amendment of June 24, 1957, which revised Spalding's claim 2 added new matter.

We cannot agree with appellant. The amendment and the counts are both phrased in broad language and are supported by the original disclosure in the Spalding application which states:

"The shielding enclosure or capsule containing the sourse *is attached in some suitable manner to the bearing journal* or placed in the journal box of a railway car, and will melt at the temperatures encountered in an overheated journal.

\* \* \* \* \* \*

"A radioactive source material is carried by a housing or capsule, indicated by the dashed line blocks 9 in Fig. 1 and illustrated in detail in Fig. 2. This capsule is of sufficiently small dimension and physical configuration as to be capable of insertion into a bore in the end of the axle 1 *to be secured to the journal box directly by some suitable means* or to be placed loosely in the journal box. As seen in Fig. 2, the capsule 9 is cup-shaped to provide a stepped recess 10 for holding the radioactive material 11. A stepped plug 12 made of the same material as the cup-shaped member serves as a shielding closure, such that the radioactive material 11 will be completely surrounded by the capsule material. This capsule is preferably made of a low-melting lead aloy [sic] or other high density material having a low melting point, and is sufficiently thick to attenuate the radiation from the source to a predetermined low level." [Emphasis added.]

The application also states that "Fig. 1 is an illustration of *one embodiment* of this invention;" [Emphasis added.]

We hold, therefore, that the insertion by Spalding of the claims which now comprise counts 2 and 3 of the interference was warranted by the above disclosure in the Spalding application as filed.

Whatever may be the merits of appellant's attack on the operability of Spalding's disclosure, this court cannot consider matters which are based only on appellant's argumentative assertions and are not supported by the record. This attack is predicated upon the proposition that since Spalding shows the radioactive material placed inside the journal box, the level of radiation required to penetrate the journal box housing and to be detected by a suitable radiation detector would be such as to be above the safe level of permitted radiation for such uses. It is noted that appellant's specification is silent as to the radiation level of the material used in his invention. It is also noted that neither appellant nor Feddern testified as to the level of radiation or the physical or chemical nature of the isotopes which were used in the device on which the alleged test of April 6, 1952 was conducted.

We find nothing in the record as presented here from which a factual determination can be made as to the alleged inoperability of Spalding's disclosure. We therefore agree with the statement of the Board of Patent Interferences that:

" * * * If the Primary Examiner finds that the senior application's disclosure is functionally operative on its face, that is, that there is no apparent physical reason why it cannot be made to work, putting aside questions of expense, convenience, and commercial acceptability, the burden on a junior applicant to show that it is in fact inoperative is heavy. The Court of Customs and Patent Appeals said in Field et al. vs. Knowles, 37 CCPA 1211; 1950 CD 521; 86 USPQ 373.

"The disclosure of an application placed in interference by the Patent Office is presumed to be an operative disclosure, Mark vs. Greenawalt, 32 App.D.C. 253, and will not be held inoperative unless it is established (by the junior party by a preponderance of the evidence, Trumbull et al. vs. Kirschbraun, 21 CCPA 758; 20 USPQ 46) that it cannot be made to operate for any practical or useful purpose. Mark vs. Greenawalt, supra, by such changes and alterations, short of invention, which one skilled in the art would be capable of applying in constructing the device with the disclosure of the specifications and the drawings of the applications as his guide [citations omitted]. It is unnecessary to establish commercial utility providing the apparatus will operate in the manner described [citation omitted], though an otherwise operative machine has been held lacking in patentable utility, where its use in industry would be prohibitive due to limitations inherent in its nature, Hartford-Empire Company vs. Obearnester Glass Company [sic], 71 F.(2d) 539 (CCA 8th, 1934) cert. den. 293 U S 65 [625, 55 S.Ct. 345, 79 L.Ed. 712]; Cleveland Punch and Shear Works vs. E. W. Bliss Company, 145 (F2d) 991 (CCA 6th, 1944). The capacity to perform in the manner intended, though only in a crude way is sufficient [citations omitted]. The junior party's burden of proof is often carried with evidence of *inter partes* tests performed of devices built according to the application disclosure, but apparent inoperativeness revealed by such tests may be held to be of little weight where it appears that the testers failed to utilize the skill of the art to rectify the difficulties whence stemmed in [sic] operativeness. [citation omitted]. Failure of the junior party to build and conduct an *inter partes* test of his opponent's device may be fatal to his contention of inoperativeness. Lavin vs.

Pierotti, 29 CCPA 1235, 129 F(2d) 883, 54 USPQ 400.

"See also Tansel vs. Higonnet et al., 42 CCPA 732, [215 F.2d 457,] 103 USPQ 58, in which the court further discusses and applies its views expressed in Field et al. vs. Knowles."

For the foregoing reasons, the decision of the Board of Patent Interferences is affirmed.

Affirmed.