WILLCOX & GIBBS SEWING–MACH. CO. et al. v. INDUSTRIAL MFG. CO. et al.

(Circuit Court, D. New Jersey. June 17, 1901.)

1. PATENTS—VALIDITY AND INFRINGEMENT—SEWING-MACHINE TRIMMER.

The Bigelow patent, No. 341,790, for an automatic trimmer for attachment to a sewing machine, to trim the fabric ahead of the sewing mechanism, covers a patentable combination which was not anticipated, nor is its validity affected by patent No. 263,467, previously granted on a division of the same application, and covering broadly the combination with an overseaming sewing mechanism of any shear trimmer to trim in advance of the sewing, and which expressly disclaimed the mechanism of the trimmer, as included in a separate division of the application. Such patent also *held* infringed as to all its claims.

2. SAME—EXPIRATION—FOREIGN PATENT.

Rev. St. § 4887, which shortens the term of a United States patent where necessary to make it expire at the same time as a foreign patent for the same invention, does not apply where the foreign patent was granted to a different person, and without the knowledge or consent of the American patentee.

In Equity. Suit for infringement of patent. On final hearing.

Howson & Howson, for Willcox & Gibbs Sewing-Mach. Co.

A. C. Paul, for trustees.

A. B. Stoughton, for defendants.

GRAY, Circuit Judge. This is a suit in equity brought by the complainants above named to restrain the defendants from further infringing letters patent No. 341,790, granted May 11, 1886, to John Bigelow, and for an accounting of damages and profits accruing from the past infringement of said patent. Complainant Willcox & Gibbs Sewing-Machine Company is the exclusive licensee under the patent in suit, and complainants Bigelow and Greenwood, as trustees, are owners of the legal title to the patent. The application upon which the patent in suit was issued was a division (division B) of Bigelow's original application, filed June 5, 1879, division A of which was patented August 29, 1882, No. 263,467. Each division contained a cross reference to the other. Prior to the patent in suit, and to previous patents to Bigelow, the patentee, there had been devised automatic trimmers attached to sewing machines for the purpose of trimming the edges of the material sewed, alongside of or after it came from the needle. To Bigelow himself, the patentee of the patent in suit, there had been issued in 1879 a patent, No. 214,354, in which shear cutters were arranged to trim alongside of or after the sewing. As appears from the testimony, there had come to be a demand for a trimming device that would trim the edges of knit goods and other stretchy material in advance of the sewing mechanism, so that a seam equally distant from the edges might be made, free from any pulling or pushing up of the material, especially on the curved seams necessary in underwear, stockings, and lace goods. This was a demand never theretofore met, particularly in connection with overseaming or buttonhole stitching. To supply this want, Bigelow, in division A of the application of June 5, 1879,

asked for the combination of any overseaming machine with any trimmer arranged to cut in advance of the sewing mechanism, his combination being the first to accomplish that result.    Upon this division A of his application he obtained on August 29, 1882, patent No. 263,467, for this broad combination, irrespective of the particular construction of the elements of the combination.    In the specifications of the patent he said, "Neither do I herein claim specifically the patentable elements of the trimming device shown, since I have made them the subject of division B of this case."    In the specifications of the patent in suit he says, "This application being a divisional application of original application filed June 5, 1879, and patented August 29, 1882, No. 263,467."    The gist of the invention covered by the patent of 1882, division A, was such a combination of any trimming device with any overseaming sewing mechanism as would successfully trim knit goods and other stretchy material in advance of the sewing, while the gist of the present invention resides in the particular form of the trimming device arranged to cut in advance of the line of sewing.    It was manifest that the form of cutter must be the kind known as "shear cutters."    The punching or chisel like cutters adapted for leather and other such material presenting sufficient resistance to avoid the puckering and pulling that cutting of that kind would produce in knit fabrics would clearly be unadapted for the purpose of the present patent.    It was important that the point of contact of the blades, in performing the function of shear cutting, should be immediately in advance of, and as near as possible to, the mechanism that made the stitch.    The reason for this is obvious, especially in respect to curved and irregular seams.    It was found that the blades required frequent sharpening and renewal.    The necessary grinding tended to put further away the cutting point from the sewing mechanism, and thus impair the efficiency of the combination.    This difficulty was overcome by the detachable blades of the patent in suit, and their peculiar form and adjustability, devised to operate in combination with any sewing mechanism, whether for overseaming or straight sewing.    In his specifications of the patent in suit, the patentee makes a general statement of his invention, thus:

"This invention relates to trimming devices for sewing machines, in which two shear-cutting edges, one stationary and the other moving or movable, are employed; and the novelty consists, more particularly, in combining with the stitch-forming mechanism of a sewing machine a shear trimmer composed of a fixed and movable cutter, the movable cutter being adjustable and devised to regulate the position of its cutting edge to the sewing mechanism and to the cutting edge of the co-operating cutter."

The claims of the patent in suit are four in number, and are as follows:

"(1) In a sewing and trimming machine, and in combination with the stitch-forming mechanism thereof, a shear trimmer comprising a fixed and movable cutter, having for its movable cutter a bar or plate provided with the cutting edge at one end, and being adjustable lengthwise on its carrier, to regulate the position of said cutting edge relatively to the sewing mechanism and to the cutting edge of the co-operating cutter, substantially as described.    (2) In a sewing and trimming machine, and in combination with the stitch-forming mechanism thereof, a shear trimmer having a movable cutter or blade, and a stationary co-operating cutter or blade, each adjusta-

ble independently of the other, to regulate the position of its cutting edge relatively to the sewing machine and to the edge of the co-operating cutter; the stationary cutter or blade being formed of a bar or plate with the cutting edge at one end, and the two cutters having their edges held in contact by spring pressure, substantially as described. (3) In a sewing and trimming machine, and in combination with the stitch-forming mechanism of the sewing machine and the movable blade or cutter of the trimming device, a stationary cutter formed of a bar or plate provided with the cutting edge at one end, and being adjustable lengthwise, to regulate the position of said cutting edge relatively to the sewing mechanism and to the cutting edge of the movable cutter, said cutters having their edges held in contact with each other by spring pressure in cutting, and thereby having a shear action suited to divide knit goods and other textile fabrics, substantially as described. (4) In a sewing and trimming machine, and in combination with the work plate and stitch-forming mechanism of the sewing machine, and with the movable cutter of a shear-trimming device, a stationary co-operating cutter formed of a bar or plate, and a support below the work plate, to which support said bar is secured, said bar having the cutting edge at its upper end and being adjustable lengthwise, to regulate the position of said cutting edge relatively to the work plate and stitch-forming mechanism and to the cutting edge of the movable cutter, substantially as described."

To the suit on this patent the defendants have opposed four several defenses: (1) That the subject-matter of the claims of the patent in suit is wanting, in view of the art, in patentable novelty; (2) that the patent in suit is absolutely void, because it is for the same invention as the expired patent, No. 263,467, being division A of the application of June 5, 1879; (3) that the patent in suit expired with the British patent, No. 4,113, of 1882; and (4) noninfringement.

As to the first defense,—the lack of patentable novelty, in view of the art,—it must be admitted at the outset that defendants' counsel is right in contending that, as a general proposition, mere adjustability of parts of a mechanism or combination is not sufficient ground for the issuance of a patent. It is true, also, that the defendants have succeeded in showing that in the prior art cutters and trimmers have been made adjustable with respect to the needles and the sewing mechanism. But mere adjustability of the blades of the shear cutters is not of the gist of the invention for which the patent in suit was granted. It is for a particular form of trimmer in combination with a sewing mechanism, with the blades so adjustable as to keep the cutting point of the shear trimmer always at the same distance from the needle, and trimming either in advance of the sewing, or to one side thereof or after, with either overseam or straight sewing. The new result obtained by this combination of this adjustable trimmer with a sewing mechanism is a better and more economical automatic sewer and trimmer than had ever existed prior to the patented combination. This fact is attested by the evidence as to the extent of the use of the invention. It is in evidence, and not denied, that the device of the patent in suit has gone into very extensive use among hosiery manufacturers. In the dozen years and more of its life, the validity as well as usefulness of the patent has been apparently acquiesced in by the public. It is in testimony that there are no successful shear trimmers now in use, other than those of the patent in suit. The principle of adjustability and the adjustable blades may have been old, and the sewing mechanism may have

been old; but these elements, old or new, are so combined as to produce the new and valuable result above alluded to. We see no reason to discredit the invention as lacking the qualities of a true and patentable combination. A number of patents have been cited by defendant to support its allegation of anticipation. An examination, however, of these, does not disclose the particular combination of the patent in suit. Some of them, as notably the Woodruff and Browning patents, while showing devices for cutting and trimming in advance of the sewing, and adjustable blades or punches, do not show shear cutters of the form or kind in the patent in suit, and made adjustable in the combination described, for the successful accomplishment of the purpose specified. Mere adjustability, then, is not the thing patented, but its use in connection with the shear cutters and the sewing mechanism for the purposes of the invention make a patentable combination.

The second defense is that the patent in suit is absolutely void, because it is covered by the previous Bigelow patent, of 1882, issued as division A on the application of June 5, 1879. Bigelow, the patentee of the patent in suit, in his patent of 1879, No. 214,354, provided for a shear trimmer so arranged in combination with a sewing machine making a zigzag stitch as to trim the fabric after it was sewed. But it was not until the patent of 1882, No. 263,467 (division A of the application of June 5, 1879), that a way was discovered of combining a shear trimmer with an overseam sewing mechanism, so as to trim the fabric in advance of the stitch. The gist of this invention was the combination of any shear trimmer and an overseam sewing mechanism that would automatically and successfully trim the fabric in advance of the sewing. In the specifications he described, as one form of trimmer, and possibly the best, the adjustable trimmer that is described in the patent in suit; but he distinctly disclaims any patent for the trimmer in that branch of the application, stating that it was the subject-matter of the application for a distinct patent in division B of his application of June 5, 1879; the patentee stating specifically:

"I do not, therefore, limit the application of my invention to any special over-edge sewing machine; nor do I limit myself to the special form of trimming device shown, since other well-known devices would answer equally well; neither do I herein claim specifically the patentable elements of the trimming device shown, since I have made them the subject of division B of this case."

The claims of this 1882 patent are broad; the breadth of claim 1 fairly characterizing all three, which is as follows:

"In combination with the stitch-forming mechanism of an over-edge sewing machine, an automatic trimmer arranged to act in advance of said mechanism and in the line of the seam, so that said mechanism can operate to lay its stitches across or over the edge or edges cut by said trimmer, substantially as described."

That it was not considered by the patent office that this patent of 1882 covered the special construction of the trimming device of the patent in suit is shown (to quote from complainants' brief)—

"By the fact that an interference was declared between this application of Bigelow and an application of Stockton Borton, which resulted in patent

263,650. The Borton application showed an automatic trimmer arranged to operate in advance of the sewing mechanism and in the line of the seam, —one that was not adjustable, and was not a shear trimmer, and had only a single knife. The patent office declared an interference between Borton's application and Bigelow's application, division A. This interference was decided in Bigelow's favor. The action of the patent office in declaring this interference was equivalent to a ruling upon the part of the patent office that a device constructed in accordance with the drawings of the Borton patent would be an infringement of the claims of the Bigelow 1882 patent. Of course, if the invention of the Bigelow 1882 patent were the same as the invention of the patent in suit, the Borton device could not have been an infringement of the Bigelow 1882 patent, as no one would contend for a moment that the Borton device would be an infringement of the Bigelow patent in suit."

Naturally, as the patentee chose to illustrate his device by the form of trimmer claimed in the other division of his case, which is the patent in suit, the drawings in both patents are the same. But each patent was capable of independent use without conflicting with the other patent. Neither one necessarily infringed upon the other. As we have before said, the earlier patent, division A, was for the combination of any form of trimming device arranged to trim in advance of any over-edge sewing mechanism, while division B was for the particular form of shear cutters described in combination with any sewing mechanism, whether arranged to cut' in advance of or after the stitch. The issue of a prior patent describing the invention of the patent in suit does not necessarily render the later patent void, when both were issued on applications pending at the same time. In this case not only were both applications pending at the same time, but the one distinctly referred to the other in such terms as to negative any inference of abandonment.

The third defense, that the patent in suit expired with the British patent, No. 4,113, of 1882, is also devoid of merit, in view of the testimony of Mr. Bigelow, the patentee of the patent in suit, which is uncontradicted by anything in the record. In his testimony he satisfactorily explains his agreement with Willcox, who took out the British patent, and directly and emphatically denies that he ever saw the patent, or was aware of its issue or what was included in it, until called upon to testify in this case. We do not think that section 4887 of the Revised Statutes applies to a patent taken out by another than the patentee of the patent whose term is sought to be shortened, and without his acquiescence or consent. In this we have the satisfaction to agree with Judge Putnam, of the First circuit, in the case of Beach v. Hobbs (C. C.) 82 Fed. 926.

This brings us to the remaining question of infringement. On this point the defendant relies upon certain language contained in the opinion of the board of examiners in chief of the patent office, which is as follows:

"There can be but little question that the matter presented is patentable. and the only trouble seems to have grown out of the apparent broad scope of the claims. It is evident that applicant is not entitled to anything beyond the specific mechanism he has shown, and the cutter blades so made adjustable. His own patented device shows trimming blades pivoted together as shears, and it is but an improvement on this which he now presents. The cutter blades are not only adjustable, but are so constructed and attached.

that they are removable, so that others can be substituted in place of those worn or broken without sacrificing the more expensive and permanent parts to which they are attached. The great advantage of this adjustability in this particular device is apparent, and its improvement over anything which has gone before it is conceded. So, also, is the improvement of the spring device for holding the blades together. So, also, is the arrangement of the support for the stationary cutter below the plate. * * * Drawn with the liberal use of the indefinite article, they [the claims] would seem to be intended to cover something other than what applicant has disclosed as novel and useful, but, terminating as they do with 'substantially as described,' we must suppose that 'a shear trimmer,' etc., means the trimmer, and the parts specified and shown, and the courts would so construe and limit the claims."

We think that a careful examination of the expert testimony on both sides will make it apparent that the devices covered by the four claims of the patent in suit are found in defendants' machine, and we agree with complainants' expert Metcalf in saying:

"In Exhibit Complainants' Machine and in Exhibit Defendants' Machine the stitch-forming mechanism, the trimming device, and the adjusting devices are combined and operated precisely as set forth in the patent in suit, and the result of the co-operation of these elements and mechanisms is the same as set forth in the patent in suit. The explicit statement of the comparison of complainants' machine and defendants' machine with the patent in suit, is as follows: Complainants' machine and defendants' machine each has every one of the elements named in each and every one of the claims of the patent; that is to say, each machine has a stitch-forming mechanism, and has above the work plate, and adjacent to the stitch-forming mechanism, a movable cutter bar or plate carried by a rocking carrier, and with its cutting edge on the end of the bar or plate and adjustable lengthwise in the carrier, and also has a co-operative cutter bar or plate on a support below the work plate, and with its cutting edge at its upper end and adjustable lengthwise, the adjustment of each cutter being to regulate the cutting point in relation to the stitch-forming point; and finally each of these machines has a spring-pressure means to keep the cutters in contact to do their work efficiently; and all these elements are combined together, and are provided with mechanism to operate the movable cutter substantially as and in the manner set forth in the patent."

We are therefore of opinion that the patent in suit is valid, and has been infringed in all of its claims by defendants, and that a decree should be drawn to this effect, for an injunction conformable to the prayers of the bill, and providing for a reference to a master to take an accounting of the profits and damages to which complainants are entitled, and for costs.