JACQUARD KNITTING MACHINE CO., Inc., v. ORDNANCE GAUGE CO., Inc.

Civ. A. No. 10850.

United States District Court
E. D. Pennsylvania.

Feb. 16, 1951.

Francis L. Van Dusen, Philadelphia, Pa., for plaintiff.

Leonard L. Kalish, Philadelphia, Pa., for defendant.

McGRANERY, District Judge.

The plaintiff has filed a complaint seeking a preliminary and final injunction on the ground of patent infringement. Defendant denies infringement, and also denies the validity of the patent in suit. The

905

answer sets forth this position in several affirmative defenses, and a counterclaim containing substantially the same allegations asks for a declaratory judgment that the patent is invalid "and/or" not infringed. Defendant here moves for summary judgment on the issues raised in the answer and counterclaim; and plaintiff presents a motion to amend its complaint in order to bring in an additional defendant, Mr. Julius Sirmay.

The invention covered by the patent in suit was made by Mr. Sirmay while he was in the employ of the plaintiff, and his application for a patent was assigned to the plaintiff, which became the patentee. Mr. Sirmay subsequently left the employ of the plaintiff, buying stock in and taking employment with the defendant. The plaintiff charges, by affidavit of a Mr. Miller on information and belief, submitted in connection with the motion to amend, that the defendant associated itself with Sirmay for the purpose of obtaining for its own use and benefit, without compensation to the plaintiff, the knowledge and experience of the plaintiff in the manufacture of knitting machines; that Sirmay occupies a position of influence, authority and control over the defendant; and that, in short, there is privity between defendant and Sirmay. Mr. Sirmay has, in an affidavit on personal knowledge, denied the allegations of Mr. Miller and has set forth the facts of his association with the defendant in a manner negativing the charge of privity.

The motion to amend will be granted, for it cannot, in my opinion, prejudice the defendant, and it will serve to avoid an unnecessary multiplicity of suits, in consonance with the spirit of the Federal Rules. The presence of Mr. Sirmay as a defendant will not, as the Ordnance Gauge Co. apparently fears, affect the issue of the privity of the defendants to its detriment. But under Rule 56(e), Fed.Rules Civ.Proc. 28 U.S.C.A., with respect to the motion for summary judgment, the Miller affidavit, being on information and belief, may be disregarded. For the purposes of the motion on the complaint and answer, defendant Ordnance Gauge and Sirmay must be considered as not in privity. Consequently,

the doctrine of Westinghouse Electric & Mfg. Co. v. Formica Insulation Co., 1924, 266 U.S. 342, 45 S.Ct. 117, 69 L.Ed. 316, preventing the assignor of a patent right from attacking the validity of a patented invention as against any one claiming the right under his assignment, is inapplicable, without the necessity of considering the effect on that doctrine of Scott Paper Co. v. Marcalus Mfg. Co., 1945, 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47, noted in 59 Harv. L.Rev. 299; cf., Standard Water Systems Co. v. Griscom-Russell Co., 3 Cir., 1922, 278 F. 703. An issue of fact with respect to the privity of defendant and Sirmay is raised in the answer to the counterclaim. Nevertheless, upon consideration of all the issues, it is the opinion of the Court that summary judgment cannot be awarded.

Involved in the consideration of this motion are three patents, purporting to cover three separate inventions. On May 9, 1936, an application for a patent was filed, disclosing (at least arguendo) (1) a knitting machine, (2) a knitting needle and (3) a method for transferring loops of yarn from one needle to another in knitting. The application, however, claimed only the machine and the needle. Ultimately, on November 21, 1939, patent No. 2,181,105 was issued for the machine. Before the issuance of the machine patent, a divisional application was filed, claiming the needle and the method. Ultimately, on August 10, 1943, patent No. 2,326,694 issued for the needle invention. But on July 16, 1943, before the issuance of the needle patent, a divisional application was filed claiming the method, and that patent, No. 2,397,456, the one in suit, issued on March 26, 1946.

The defendant's first affirmative defense and corresponding item of counterclaim is that the method patent is not a division of the machine patent because the method patent was applied for subsequently to the issuance of the machine patent, and hence the two were never co-pending, Fessenden v. Wilson, 1931, 48 F.2d 422, 18 C.C.P.A., Patents, 1171; and, the machine patent, wherein the method was disclosed, issued more than one year prior to the filing date of the method patent, rendering the latter invalid under R.S. 4886 and 4887, 35 U.S.

C.A. §§ 31 and 32, on' the grounds of prior patenting and publication.

■ Under Patent Office practice, sanctioned by the courts, an application for a patent claiming or disclosing two or more separate inventions gives rise to the right to file a divisional or continuing application, during the pendency of the prior application, "dividing out" a portion of the parent application upon requirement by the Patent Office, or voluntarily "continuing" something carved out of the parent application. The effective date of the claims of the divisional or continuation application is that of the original application, the original being deemed a constructive reduction of the invention to practice. Chapman v. Wintroath, 1920, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491. The issue here, however, is complicated by the fact that there are three successive applications rather than two, and the third application (for the patent in suit) was not filed during the pendency of the first. Nevertheless, the third was filed during the pendency of the second, which was filed during the pendency of the first, and apparently the Supreme Court has given approval to the practice of allowing the last application to be considered a division of the first, under these circumstances. Crown Cork & Seal Co. v. Ferdinand Gutmann Co., 1938, 304 U.S. 159, 58 S.Ct. 842, 82 L.Ed. 1265; see also, Teter v. Kearby, 1948, 169 F.2d 808, 36 C.C.P.A., Patents, 706. Mr. Justice Black, dissenting in the Crown Cork case has pointed out the vice of the "divisional on divisional" device in extending the term of legal monopoly; but this Court has no alternative but to follow what appears to be the established law. Therefore, if the third application (for the method patent in suit) is a division or continuation of the application for the first or machine patent, it is entitled to the filing date of the first; and the machine patent, therefore, did not issue more than one year prior to the effective filing date of the method patent, so as to render it invalid under the provisions of R.S. 4886 and 4887, 35 U.S.C.A. §§ 31 and 32.

■ If the application for the third or method patent was a proper division or continuation of the application for the first or machine patent, then the defendant's second affirmative defense and corresponding item of counterclaim must fall. Defendant here charges public use of the method of the invention for more than one year prior to the application for the patent, rendering the patent invalid under R.S. 4886 and 4887, 35 U.S.C.A. §§ 31 and 32. Public use is admitted commencing approximately at the date of the issuance of the machine patent, which occurred more than' the statutory period prior to the actual filing date of the method patent. But the method patent, being a proper division of the machine patent, is entitled to the filing date of that patent. Consequently, there was no public use for more than' a year prior to the effective date of the method patent application, even though there was public use for more than one year prior to the date of the actual application for that patent.

However, the defendant in addition argues that, under the case of Muncie Gear Works v. Outboard Marine & Mfg. Co., 1942, 315 U.S. 759, 62 S.Ct. 865, 86 L.Ed. 1171, in' determining whether a patent claim is invalid by reason of prior public use for more than the statutory period, the period is calculated from the date upon which the claim was first presented to the Patent Office. Here, the claim to the method was presented to the Patent Office for the first time in the second application, November 8, 1938, which ultimately ripened into the needle patent. And there is admitted public use from approximately May 9, 1936.

■ There is language in the Muncie case to form a basis for the conclusion urged by the defendant. But I believe that a careful reading of that case does not justify the conclusion. It appears that the invention' there sued upon was an anti-cavitation plate in connection with a streamlined housing, but it was not until more than the statutory period after public use that there was any disclosure of the streamlined housing feature. The decision is thus in accord with the pre-existing decisions that claims of a divisional, continuation or amended application to an invention not disclosed in the original application are invalid if the new disclosure or description is filed after the statutory bar of

public use has run. Schriber-Schroth Co. v. Cleveland Trust Co., 1938, 305 U.S. 47, 573, 59 S.Ct. 8, 83 L.Ed. 34. As pointed out by Chief Judge Hand in R. U. V. Engineering Corp. v. Borden Co., 2 Cir., 1948, 170 F.2d 688, 689, the Muncie case is merely "the last of many decisions" halting attempts to beat the public use bar by introducing into the disclosure "a new and unexpressed invention two years after the art had already made the advance." See also, Hazeltine Research v. General Motors Corp., 6 Cir., 1948, 170 F.2d 6; Interchemical Corp. v. Sinclair & Carroll Co., 2 Cir., 1949, 144 F.2d 842; Western Lithograph Co. v. W. H. Brady Co., D.C.E.D. Wis., 1947, 71 F.Supp. 383; cf., Engineering Development Lab. v. Radio Corp. of America, D.C.S.D.N.Y., 1945, 62 F.Supp. 464, reversed, 2 Cir., 153 F.2d 523; Allen v. Radio Corp. of America, D.C.Del., 1942, 47 F.Supp. 244. The Muncie case, therefore, has not altered the law of the previous decisions holding that in the absence of intervening rights, a divisional, continuation, or amended application which claims subject matter previously disclosed or described, though not previously claimed, is valid even though the statutory period of public use has run prior to the assertion of the new claims. General Talking Pictures Corp. v. Western Electric Co., 1938, 304 U.S. 175, 58 S.Ct. 849, 82 L.Ed. 1273; Crown Cork & Seal Co. v. Ferdinand Gutmann Co., supra.

Consequently, if there was adequate disclosure in the first or machine patent application, the claims to the method of the patent in suit are not barred by the statutory period of public use prior to the date of the filing of the claims. If the disclosure of the machine patent application is controverted, I believe a question of fact is presented for the testimony of men skilled in the art.

The Crown Cork case, supra, is also pertinent to the defendant's sixth affirmative defense and corresponding item of counterclaim on the ground of laches. That case held that, in the absence of intervening adverse rights, no excuse need be shown for a lapse of more than two years in presenting claims in a divisional application regularly filed and prosecuted in accordance with Patent Office rules. Cf. the dissenting opinion of Mr. Justice Black. Apparently defendant presses no claim of intervening adverse rights, but if it does, the issue then becomes a disputed question of fact, precluding summary judgment. The defendant also urges laches on the ground that plaintiff wilfully delayed the issuance of the patent so that the term of the patent did not begin to run until eleven years after public use of the alleged invention. Plaintiff cites cases holding that an applicant has the right to proceed even interminably in the Patent Office in the prosecution of a patent application, without subjecting himself to the charge of laches, provided he observes the rules of the Patent Office and the patent statutes. Overland Motor Co. v. Packard Motor Car Co., 1927, 274 U.S. 417, 47 S.Ct. 672, 71 L.Ed. 1131; Coltman v. Colgate-Palmolive-Peet Co., 7 Cir., 1939, 104 F.2d 508. Defendant distinguishes the cases factually from the case at bar, and further denies that the rule relied on by plaintiff has ever been held to apply where public use has been running as of a date long prior to the presentation of claims to an alleged invention. One may concede the validity of the defendant's doubt, in the light of the philosophy of recent patent decisions, on the score of the present strength of the "interminable delay" rule. But in the absence of some positive authority, and in the further absence of evidence indicating the plaintiff's motive, I am reluctant to hold the plaintiff guilty of laches as a matter of law at this point. It may well be, however, that as the facts are fully unfolded at the hearing, a substantial basis for the defense of laches will emerge.

Defendant's third affirmative defense and corresponding item of counterclaim is that plaintiff abandoned the alleged invention of the patent in suit by reason of its failure to submit timely claims to the method, and by reason of the fact that the two claims to the method, originally presented to the Patent Office in the application which matured into the second or needle patent, were cancelled from the application more than six months prior to the actual filing date

of the third or method patent in suit. Thus for more than six months there were no claims before the Patent Office to the asserted method patent.

 However, the disclosure of the method of the patent in suit was continuously before the Patent Office, despite the cancellation and temporary lapse of the claims. The continuity maintained in the successive applications shows that plaintiff intended to retain, not to abandon, the disclosed invention. Crown Cork & Seal Co. v. Ferdinand Gutmann Co., supra; Writer v. Kiwad, 1933, 63 F.2d 259, 20 C.C.P.A., Patents, 869. Again, if the disclosure is disputed, as it apparently is, a question of fact arises, precluding summary judgment.

Defendant's eighth affirmative defense and corresponding item of counterclaim is that plaintiff is estopped to contend defendant infringes the patent in suit because plaintiff does not charge defendant with infringement of either of plaintiff's earlier issued patents, and plaintiff has made admissions preventing it from asserting the patent in suit to be any broader in scope than the prior needle patent. Further, defendant contends plaintiff has made admissions to the effect that the method of the patent in suit was old in prior art.

 Assuming that failure to bring suit on the earlier patents might work an estoppel on plaintiff with respect to the last patent, nevertheless the admissions relied upon to complete the estoppel are insufficient. It appears that the statements allegedly containing the admissions were made by plaintiff's patent solicitor during the prosecution of the application before the Patent Office, in the course of the remarks of various amendments. But the law is clear that there can be no recourse to the arguments of the applicant to the Examiner, to establish admissions or estoppel. The file wrapper can be examined for estoppels merely by looking to the changes in the claims. See A. G. Spalding & Bros. v. John Wanamaker, New York, 2 Cir., 1919, 256 F. 530; Boyer v. Keller Tool Co., 3 Cir., 1903, 127 F. 130. Of course the statements of the plaintiff do appear on their face to be admissions against interest with respect to the patent in suit. And it may well be that, at the hearing, those statements may be relevant to the issue of lack of invention or double patenting, as admissions against interest or contemporaneous statements.

Double patenting constitutes defendant's fourth and fifth affirmative defenses and corresponding items of counterclaim. The cardinal point made by defendant in this connection centers about the admission of plaintiff's counsel, made at the bar during oral argument, that the use of the machine of the first patent and the needle of the second patent in a stitch transfer operation would necessarily involve the use of the method of the third patent; so that, after the expiration of the machine and needle patents, the public could not use the machine and the needle for stitch transference without infringing the method patent. Hence, there would be in effect an extension of the period of monopoly of the machine and needle patents beyond the 17 year statutory grant. The situation may be described as the technological domination of the earlier patents by the last patent.

 It appears, however, that the patented knitting machine can be used with various transfer needles operating by various methods different from the patent in suit and the method of transferring in suit can be commercially performed on machines other than that of the plaintiff's patent. But more particularly it appears that plaintiff's patented needle can be used only by the method of the patent in suit. Essentially, therefore, the technological domination exists with respect to the needle patent.

 An examination of the decisions reveals a confused picture of the issue of double patenting on the basis of technological domination. It is unquestionably true that the factor of the extension of monopoly resulting from technological limitations has influenced some courts to hold, or to utter dictum to the effect that inventions are invalid for double patenting, without examination of the claim definitions of the respective inventions. See Saranac Automatic Mach. Corp. v. Wirebounds Patents Co., 1931, 282 U.S. 704, 715, 51 S.Ct. 232, 75 L.Ed. 634; see also, Otis Elevator Co. v. Portland Co., 1 Cir., 1903, 127 F. 557; Willcox & Gibbs Sewing-Mach. Co. v. In-

dustrial Mfg. Co., 3 Cir., 1901, 112 F. 535, reversing C.C., 110 F. 210; Vapor Car Heating Co. v. Gold Car Heating & Lighting Co., dictum, D.C.S.D.N.Y., 1923, 296 F. 201, 202; Thomson-Houston Electric Co. v. Illinois Telephone Constr. Co., C.C. N.D.Ill., 1906, 143 F. 534; affirmed on ground of implied license, 7 Cir., 1907, 152 F. 631; Craig v. Michigan Lubricator Co., dictum, C.C.E.D.Mich., 1896, 72 F. 173. But I am persuaded that the better view is that technological domination alone does not fall within the ban of double patenting. Waterbury Buckle Co. v. G. E. Prentice Mfg. Co., 2 Cir., 1922, 286 F. 358, on final hearing, D.C., 294 F. 930; Century Electric Co. v. Westinghouse Electric & Mfg. Co., 8 Cir., 1911, 191 F. 350; Dayton Fan & Motor Co. v. Westinghouse Electric & Mfg. Co., 6 Cir., 1902, 118 F. 562; Thomson-Houston v. Ohio Brass Co., 6 Cir., 1897, 80 F. 712; Gillette Safety Razor Corp. v. Standard Safety Razor Corp., D. C., Conn., 1932, 2 F.Supp. 53. The rationale for this view is that while a claim for A may dominate a claim for B if, at a given moment, scientific knowledge cannot make, use or vend B without infringing A, nevertheless this technological dominance may be terminated by progress in the next moment. See Stringham, Double Patenting (1933), sections 2800B and 2831C. Thus if the patented needle can transfer only by the method of the patent in suit, it is dominated by the latter patent because the needle cannot be used in a stitch transfer operation even after its patent has expired, without infringing the method patent. But this domination exists because of the failure of the knitting industry to discover another method of using the plaintiff's patented needle, and the failure may at any time be remedied. Thus, the incidental extension of monopoly thereby involved is a normal incident of our patent system.

The essential question to be considered in an issue of double patenting is the identity or non-identity of the inventions of the two patents. The case of Saranac v. Wirebounds, supra, though it speaks of the extension of monopoly by means of an attempted technological domination, holds that the mechanical device by which the extension of monopoly was at-

tempted did not involve invention. See Nestle-Le Mur Co. v. Eugene Limited, 6 Cir., 1932, 55 F.2d 854; Gear Grinding Machine Co. v. Reo Motor Car Co., 6 Cir., 1931, 50 F.2d 412. And I believe that the question of the alleged identity of the inventions in this case should properly be reserved for hearing. Dubilier Condenser Corp. v. New York Coil Co., 2 Cir., 1927, 20 F.2d 723. It does appear that the plaintiff's counsel have in the past taken the position that the method of the third patent did not involve invention. And it may well be that the defendant can, at the hearing, strengthen his case by reference to the plaintiff's earlier position. But the matter is not so clear to me now that I would be justified in depriving plaintiff of an opportunity of trying his case.

Similarly, with respect to defendant's fifteenth affirmative defense and corresponding item of counterclaim, that under the doctrine of Halliburton Oil Well Cementing Co. v. Walker, 1946, 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3, the patent in suit is invalid because its claims represent mere functional statements of the mode of operation of the apparatus forming the subject-matter of plaintiff's earlier patents, I feel that a proper disposition of the matter requires a full presentation of evidence.

Therefore, motion for summary judgment will be denied.