**KEYES FIBRE CO. v. CHAPLIN
CORP. et al.**

**Civ. A. No. 305.**

United States District Court
D. Maine, S. D.

May 8, 1951.

See also 76 F.Supp. 981.

Leonard A. Pierce, Edward W. Atwood, Portland, Me., William F. Hall, Washington, D. C., Arthur G. Connolly, Wilmington, Del., for plaintiff.

Carroll S. Chaplin, Raymond E. Jensen, Portland, Me., William H. Davis, John Hoxie, New York City, for defendants.

CLIFFORD, District Judge.

This is a motion for summary judgment, filed by plaintiff Keyes Fibre Company. The motion rests on two grounds. The first ground is that patent No. 2,359,201, which was issued September 26, 1944, to defendant Chaplin Corporation, assignee of defendants Merle P. Chaplin and Charles J. Chaplin, is invalid because of laches, in that the effective date of the application for the patent was more than two years subsequent to the public disclosure of the idea on which the patent is based. The second ground of this motion is that the relevant claims of the Chaplin patent in suit, namely, claims 4, 5, and 11, are invalid for overclaim. A third ground, new matter, is not now pressed by the plaintiff and will be laid aside for the purposes of this motion.

A summary judgment is appropriate in a patent case, as in any other type of case, if on the face of the pleadings and all other matter properly before the Court, there is no material issue of fact on any controlling element of the case. See Friend v. Burnham & Morrill Co., 1 Cir, 1932, 55 F.2d 150; American Optical Co. v. New Jersey Optical Co., D.C.Mass., 1944, 58 F. Supp. 601, 605.

The Chaplin patent in suit relates to an improvement in the construction of dies used in the mass production of moulded pulp articles. For the manufacture of simple moulded articles, such as shallow pie plates, the trade uses a die of the following description: The die body for such a simple article consists of a one-piece metal portion in the shape of the desired product, which has many perforations for the purpose of draining the liquid from the pulp mixture; a one-piece covering screen of fine wire mesh, shaped to fit snugly over the surface of the metallic portion, which prevents the solids in the pulp mixture from passing through the drainage holes; and a clamping ring around the face of the die, holding the screen in place and defining the size of the article to be moulded. In a die for such a simple moulded article, a flat piece of screening could readily be pressed to conform to the surface of the die, without causing undue distortion of the screen. In the manufacture of a deep or highly irregular product, however, any attempt to shape the screen to the die surface by pressure alone might wrinkle, distort, or even tear the screen. The alleged invention of the patent in suit consists principally in adapting the simple form of die for the solution of this problem. The idea exemplified by the patent in suit involves providing a slot or slots in the surface of the die, and tucking and clamping the ends of the screening into such slot or slots. It is asserted that this idea permits the use of one or more sections of screening to cover the die, and the arrangement of the screen section or sections in such a way as to permit shaping of the screen covering with minimum distortion. Other advantages are also claimed for the idea.

The plaintiff is now and has been since August of 1938 using an allegedly similar idea in its manufacture of filler-flats, a highly irregular pulp product used for the storage and shipment of eggs in quantity.

The application for the patent in suit was filed November 27, 1939. Defendant seeks to refer the filing date back to October 26, 1937, which was the filing date of two Chaplin applications, of which the patent in suit is allegedly a continuation-inpart. These are applications 171,156, for method of and apparatus for producing pulp articles, on which Chaplin patent 2,326,758 was issued August 17, 1943, and also application 171,157 for pulp moulding dies, and method of constructing same, the relevant claims of which were pending in the Patent Office until September 12, 1942, when they were cancelled by the Chaplins. Further discussion will be addressed hereafter to the procedure followed in the Patent Office on application 171,157. Both the 1937 applications related to a so-called textile cop, a relatively long, tapering, tubular article, open at both ends. Application 171,156 relates to the method of producing the textile cop, and application 171,157 concerns the die for the same purpose. Both application 171,157 and the patent issued on application 171,156, disclose a

one-piece tubular die, having a vertical slot extending the length of the die surface down one side thereof, in which slot are tucked the ends of a one-piece screen fitted around the surface of the die without excessive distortion.

■ There is a sharp disagreement between plaintiff and defendant as to whether the idea for the textile cop die, as exemplified in the 1937 applications, discloses the more complex design exemplified by the patent in suit. This appears to be a question of fact. See Jacquard Knitting Machine Co. v. Ordnance Gauge Co., D.C. E.D.Pa., 1951, 95 F.Supp. 902, 908. However, whether or not there is such disclosure, as defendants allege, is immaterial on the question of laches raised by the present motion, since in either event this Court finds that there is no laches.

The idea of the textile cop die was disclosed by Merle Chaplin, one of the defendants, in a letter dated September 8, 1937, to the president of plaintiff company, and in sketches accompanying that letter. This is the only publication which preceded by more than two years the filing date of the patent in suit, November 27, 1939. Therefore, if the textile cop die does not disclose the essential elements of the patent in suit, there was lacking such delay in filing application for the patent in suit as would constitute laches under the applicable statute.[1]

■ On the other hand, if the textile cop die does disclose the essential elements of the patent in suit, then the patent in suit is properly a continuation-in-part of the applications filed October 26, 1937, since both the earlier applications were pending November 27, 1939 when the instant application was filed.[2] The plaintiff contends, however, that the defendants are barred from claiming such a continuation by reason of the action of the Patent Examiner and the Board of Patent Appeals, in rejecting the pertinent claims of application 171,157 as unpatentable over the prior art, from which rejection no appeal was taken. The Patent Office allowed three claims on application 171,157, which are not important here; but no patent ever issued on those claims.

■■ The decision of the Board of Patent Appeals, rejecting the pertinent claims of application 171,157, was filed March 12, 1942, subsequent to the filing of the application for the patent in suit; and the rejected claims were abandoned by the Chaplins about six months later, on September 9, 1942. Plaintiff contends that the time when the rejection occurred is immaterial and that the unpatentability of the idea disclosed by the textile cop application is res judicata against the defendants.

This Court is unable to agree with plaintiff's contention in this regard. Assuming the existence of a disclosure of the basic elements of the patent in suit by the textile cop die, which is not here decided, the patent in suit is entitled to the 1937 filing date if there was at all times an operative disclosure, and an unbroken continuity of claiming, of the basic elements of the continuation application. Here there was such a continuity of claiming, between October 6, 1937, filing date of the original applications, and September 26, 1944, when the patent in suit issued. Although the Patent Office in 1942 rejected the claims of appli-

---

1. The law governing the case is R.S. sec. 4886, as amended, 35 U.S.C.A. § 31, as this law stood prior to August 5, 1939. The amendment of August 5, 1939, Ch. 450, sec. 1, 53 Stat. 1212, reducing the laches period from two years to one year, applied only to patent applications filed on or after August 5, 1940, Ch. 450, sec. 2, 53 Stat. 1212. As noted, the application for the patent in suit was filed November 27, 1939.

2. Ex parte Hall (1920), Dec.Com.Pats. 56, 57. "A continuing application is an application filed subsequently to another application while the prior application is pending, disclosing all or a substantial part of the subject-matter of the prior application and containing claims to the subject-matter common to both applications. * * * a continuing application is a development of an applicant's earlier application, and (sic) which is entitled to the filing date of his earlier application for a constructive reduction to practice of the common embodiment of his invention in the two applications."

cation 171,157, as being unpatentable over the prior art, still there was no rejection of the disclosure as being inadequate. Therefore, this Patent Office decision cannot affect the continuity existing when the 1939 application was filed, so far as it relates to other claims, based on the same disclosure, which were subsequently granted by the Patent Office.

This conclusion is based on Overland Motor Co. v. Packard Motor Car Co., 1927, 274 U.S. 417, 47 S.Ct. 672, 71 L.Ed. 1131. In that case the Patent Office had repeatedly rejected certain claims for the alleged invention under consideration and the applicant cancelled those claims, declaring his intention of filing a further application for those claims. Subsequently he filed such an application, and the Patent Office granted a patent on those claims. After the second application was filed, other claims of the original application were allowed, and a patent issued thereon. During the period of more than ten years between the filing of the original application and the granting of the patent on the second application there were several publications, as well as foreign patents, disclosing the idea in question, which would void the patent unless it was entitled to the original filing date. In an action for infringement of the patent issued on the second application, the District Court upheld the patent and enjoined infringement of it. On appeal, the Circuit Court of Appeals submitted to the United States Supreme Court on report the question whether the final rejection by the Patent Office of the relevant claims in the original application amounted to res judicata, preventing the patentee from referring the second patent back to the filing date of the original application. The Supreme Court squarely held that patentee could refer back to the earlier filing date, avoiding the defense of laches. Some of the language of the Court is significant here, 274 U.S. at page 420, 47 S.Ct. at page 673: "We cannot see why he was estopped by his failure to appeal from the final rejection. It is quite true that after such rejection the Commissioner of Patents might have refused to consider his divisional application as he made it without suggestion

or consent by the Patent Office. In a qualified and limited sense a claim rejected as this was constitutes res judicata in favor of the Government and against the applicant."

Quoting with approval from Barratt's Appeal, 14 App.D.C. 255, the Court continues, 274 U.S., at page 421, 47 S.Ct. at page 673: " '* * * we do not desire it to be understood that the Patent Office may not, if it thinks proper to do so, entertain and adjudicate a second application * * * after the first application has been rejected. What we decide is, that it is not incumbent upon the office as a duty to entertain such applications, and that, if it refuses to entertain them, it has a perfect legal right so to do. An applicant is not legally aggrieved by such refusal.' "

The Court in the Overland Co. case then states its conclusion as follows, 274 U.S. at pages 421, 422, 47 S.Ct. at page 673: "As the Patent Office, by granting the patent, must be held to have waived any objection * * * on the ground that the claim allowed had been rejected before by that Office, there is no reason why the appellees below should not be allowed to avail themselves of the waiver."

As this Court interprets the rule of the Overland Co. case, it is wholly a matter of discretion with the Patent Office, whether it will reconsider a claim it has once rejected. If it does reconsider the claim, and grant a patent on it, the patentee is entitled to the filing date of his original application.

Overland Motor Co. v. Packard Motor Car Co. has never been overruled. Hoover Co. v. Coe, 1945, 325 U.S. 79, 65 S.Ct. 955, 89 L.Ed. 1488, cited by plaintiff as authority to the contrary, is not, in the opinion of this Court, inconsistent with the Overland Co. case. Hoover v. Coe is authority for the proposition that the United States District Court for the District of Columbia has jurisdiction to consider a bill in equity to review an action of the Board of Patent Appeals, where the Board has rejected some of the claims in a patent application. That decision was reached notwithstanding the fact that a reversal by the Court would not guarantee the granting of a patent on the

previously rejected claims, and despite the fact that the Patent Office retained the power to accept or reject the remaining claims in the same application. In holding that a rejection by the Board of less than all claims of the application was "final" for purposes of a bill in equity to review the rejection, the Supreme Court was giving effect to the terms of the governing statute, R.S. sec. 4915, 35 U.S.C.A. § 63, which provides for review, by a bill in equity in the District Court, of the refusal of a patent. The result is entirely compatible with the ruling of Overland Motor Co. v. Packard Motor Car Co., that the Patent Office may in the exercise of its discretion, disregard its earlier rejection and grant a patent on the previously rejected claims.

Other cases cited by plaintiff are likewise distinguishable from the present case and consistent with Overland Motor Co. v. Packard Motor Car Co., supra. Edgerton v. Kingsland, 1947, 83 U.S.App.D.C. 1, 168 F.2d 121, certiorari denied, 1948, 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150, and In re Parker, 1939, 104 F.2d 389, 26 C.C.P.A., Patents, 1359, both concerned claims *which the Patent Office had rejected* on the strength of earlier rejections of similar claims, where the earlier rejections had become final without appeal. In both cases the earlier action was held to be res judicata *against the applicant* for a patent, consistently with Barratt's Appeal, cited in the quotation from Overland Co., supra. Neither Edgerton v. Kingsland nor In re Parker holds that the Patent Office cannot reverse itself and grant claims which had previously been finally rejected. See Esnault-Pelterie v. Chance Vought Corporation, 2 Cir., 1933, 66 F.2d 474, 487. Neither Edgerton v. Kingsland nor In re Parker, holds that when the Patent Office grants such claims the granted claims do *not refer* back to the earlier filing date.

In Lavin v. Pierotti, 1942, 129 F.2d 883, 29 C.C.P.A., Patents, 1235, the court held that a final Patent Office decision that the specifications of an application failed to dis-close an operative structure, from which decision no appeal had been taken, was res judicata defeating a subsequent favorable decision by the Patent Office. However, the situation, where the specifications of the earlier application are inadequate to support *any* claims, is to be distinguished from the situation where the specific claims of the earlier application have been rejected, but the specifications of the earlier application are themselves unchallenged by the Patent Office, as was true in the case at bar. See the discussion of this distinction in Whittier v. Borchardt, 1946, 154 F.2d 522, 524, 33 C.C.P.A.Patents 1023, which defines the scope of the rule of Lavin v. Pierotti, supra.[3] Accord, American Cutting Alloys v. Carboloy Co., D.C.E.D.Mich., 1948, 80 F.Supp. 467, 473.

No suggestion has been made in the present case that a person skilled in the pulp moulding art could not make a textile cop die from the description in 1937 application 171,157, or that the die would not work in the manner described, even though the textile cop product has never been produced commercially. Since in the present case the disclosure behind the rejected claims has not been branded as defective, this Court is of the opinion that Lavin v. Pierotti, supra, is not in point here. The mere fact that the particular claims of application 171,157, for the textile cop die, were found to be anticipated by the prior art, in and of itself, does not mean that the same disclosure on which the rejected claims were based cannot sustain other claims, like those in suit, which the Patent Office found to be patentable. See Whittier v. Borchardt, supra, 154 F.2d at page 525.

Overland Motor Co. v. Packard Motor Car Co. is still the law. Therefore, the rejection of claims for unpatentability by the Patent Office, not appealed from, does not, of itself, as a matter of law, bar the Patent Office from later reconsidering and granting similar claims; and when

3. It is to be noted that the Court of Appeals for the Second Circuit gives controlling weight to the rule as set forth in Whittier v. Borchardt, supra. Philip A. Hunt Co. v. Mallinckrodt Chemical Works, 2 Cir., 1949, 177 F.2d 583, Learned Hand, J.

such claims are granted, they are entitled to refer back to the earliest date of continuous, substantial disclosure of their subject matter in the Patent Office.

■ In conclusion, whether or not the 1937 textile cop die application disclosed the essential elements of the patent in suit, laches is absent as a matter of law.

## Overclaim

■ The second major ground on which plaintiff bases its motion for summary judgment is overclaim. Plaintiff argues, in substance, that claims 4, 5, and 11 of the Chaplin patent[4] are broader than the disclosure of the specifications, in that the claims fail to include limiting, and narrowing elements which, in its view, the specifications show are indispensable to the invention disclosed. It is settled law that patent claims may be invalid for overclaiming. Graver Tank & Mfg. Co. v. Linde Air Products Co., 1949, 336 U.S. 271, 277, 69 S.Ct. 535, 93 L.Ed. 672; United Carbon Co. v. Binney & Smith Co., 1942, 317 U.S. 228, 236, 63 S.Ct. 165, 87 L.Ed. 232; 69 C. J.S., Patents, § 105(d) (1). And there is overclaim if the claim is broader than the disclosures of the specifications. Application of Moore, 1946, 155 F.2d 379, 33 C.C. P.A. Patents, 1083. The existence or non-existence of overclaim on the face of the patent is a question of law.

It is defendant's position that the claims cover the basic invention disclosed by the specifications, and that the elements referred to by plaintiff as indispensable are, if invention at all, merely desirable modifications of the basic invention. Certain of the elements of alleged overclaim are included in other claims of the patent in suit which are not in issue here.

■ A summary judgment cannot be granted on the issue of overclaim unless

4. "4. An open faced pulp molding die for molding open faced articles, comprising a molding portion provided with an open faced contoured molding surface having therein drainage openings and at least one locking slot with spaced apart opposing side walls, a peripheral portion surrounding said contoured molding surface, wire mesh screen in contact with and overlying said contoured molding surface and having at least one locking portion extending into and anchored within the locking slot by compression acting on said locking portion of the wire screen transversely of said slot to clamp said locking portions between the opposing sidewalls of the slot, said wire mesh screen also having at least one marginal extension overlying the peripheral portion of the die, and clamping means overlying the marginal extension of the wire mesh screen to clamp said extension to said peripheral portion of the die.

"5. An open faced pulp molding die for molding open faced articles, comprising a molding portion provided with a contoured molding surface having therein drainage openings and at least one locking slot with spaced apart opposing sidewalls, a peripheral portion surrounding said contoured molding surface, wire mesh screen in contact with and overlying said contoured molding surface and having at least one locking portion extending into the locking slot therein, said wire mesh screen also having at least one marginal extension overlying the peripheral portion of the die, a removable retaining member positioned in said slot and fitting the slot sufficiently tightly to compressibly clamp the screen in the slot, and clamping means overlying the marginal extension of the wire mesh screen to clamp said extension to said peripheral portion of the die."

"11. An open faced pulp molding die for molding open faced pulp articles, comprising a molding portion provided with an open faced contoured molding surface having therein drainage openings and a plurality of locking slots extending across said open faced contoured molding surface and each of which has spaced apart opposing side walls, a peripheral portion surrounding said contoured molding surface, wire mesh screen in contact with said open faced contoured molding surface and having locking portions extending into and anchored within said locking slots by compression acting on said locking portions of the wire mesh screen transversely of said slots to clamp said locking portions between the opposing side walls of said slots, said wire mesh screen also having marginal extensions overlying said peripheral portion of the die, and clamping means overlying the marginal extensions of the wire mesh screen to clamp said extensions to said peripheral portion of the die."

the overclaim is clearly shown, as a matter of law, from undisputed evidence properly before the Court. This Court, in ruling on the overclaim aspect of the present motion does not consider issues of patentability, prior art, or priority of invention. Our only concern with overclaim on this motion is whether the patentee drew his claims so broadly as to include in his patent more than he himself, in his specifications, states he has invented.

As this Court views the question, the first issue for determination is this: What do the patent claims seek to cover? Here the claims, for the purposes of this motion, are clear and unambiguous, and there is no necessity to resort to the specifications for clarification in this regard. Graver Tank & Mfg. Co. v. Linde Air Products Co., supra, 336 U.S. 271, 277, 69 S.Ct. 535. We therefore come immediately to the second question, which is this: considering what the claims clearly seek to cover, do they reach in any important respect beyond the scope of the invention described in the specification? If the answer to this question is yes, with reference to any claim, then such claim is void for overclaim. The invention must be described in the specification in "full, clear, concise, and exact terms", as the statute puts it, R.S. sec. 4888, 35 U.S.C.A. § 33; and anything not so described cannot be claimed. United Carbon Co. v. Binney & Smith Co. supra, 317 U.S. 228, 63 S.Ct. 165.

In support of the overclaim aspect of the present motion, plaintiff has placed some reliance on an affidavit of John Boyle, Jr., which was filed with the Court. No counter-affidavit was filed by defendants, under Rule 56(c), Fed.Rules Civ.Proc. 28 U.S.C.A. The Boyle affidavit has been helpful to the Court by pointing up some of the issues of this case. However, Mr. Boyle's conclusions are conclusions of law, arrived at by him from analysis of evidence which is now before the Court. As to such matters the Court must reach its own conclusions. The conclusions of the Court differ from those of Mr. Boyle, as the following analysis demonstrates.

The first alleged element of overclaim is the omission from the claims in suit of the limitation that the wire mesh screen covering the moulding surface of the die be in sections only, instead of alternatively in sections or in one piece. No such limitation was included in the claims in question. Plaintiff, in support of its contention in this regard, relies heavily on the fact that the specifications for the patent in suit state, in substance, that the disclosed die, while employing the same principle as the textile cop die, is "quite different" from the textile cop die. Furthermore, plaintiff points to the fact that the text and drawings of the patent in suit refer only to dies using a sectional screen.

The specifications do not, however, expressly limit the invention to a die having a sectional screen. This Court can conceive of a die employing a one-piece screen, appropriately cut, and making use of the techniques exhibited in this patent, to make an article quite different from the textile cop. It is not the law that breaking a unit into pieces is always invention. See e. g. Lensch v. Metallizing Co. of America, 9 Cir., 1942, 128 F.2d 654. Without further knowledge of the prior art, this Court is unwilling to rule that a sectional screen is of the essence of the disclosure by the specifications here.

The second alleged element of overclaim is the omission of a sectional *die* as an element of the claims in suit. The specifications disclose alternative treatments of the die in each of the various forms discussed. These alternatives are a die in sections, externally bolted or clamped together, and a continuous die affording slots in its surface, using a wedge of some sort to secure screen edges in the slots. This second omitted element is not overclaim.

The third alleged element of overclaim is the omission in the claims of provision for "slots between the die sections for receiving and retaining marginal edges of the cover sections." To the extent that plaintiff's contention in this regard implies that the die or the screen must be in sections, the preceding comments apply. Moreover, the claims in issue all include provision for a locking slot in the moulding surface of the die, and also for a locking portion of the screen extending into and anchored

within the locking slot. In the opinion of this Court, the third element is implicit in the words of the claims, and no overclaim is shown.

The fourth element, the omission of which in the claims in issue is asserted to amount to overclaim, is "such slots opening out into the moulding area of the die at the line of greatest die depression thereof." This element is apparently drawn from statements in the specifications, as follows:

"If the lowermost portions of the screen are locked in place * * * screen motion relative to the die is very largely prevented, and screen life thereby greatly increased." Chaplin patent, page 3, col. 1, line 14 et seq.

"However, by dividing the die structure into sections, *preferably* along lines of greatest die depression or depth, the several screen sections become such that they can be readily formed or shaped. * * *" Ibid., page 4, col. 1, line 7 et seq. (Italics added.)

No such element is included in the claims in issue.

■ The first quoted statement is not conclusive since the Chaplins do not thereby foreclose their right to claim other advantages than those named, accruing from the use of slots at other positions on the die surface. Considering the use of the word "preferably" in the second statement quoted, along with subsequent statements, not quoted, to the effect that the specifications are intended as illustrative only and not as the exclusive embodiment of an invention, it is clear that the disclosure was broad enough to cover similar structures with the slots at a different position. Boyer v. Keller Tool Co., 3 Cir., 1903, 127 F. 130, 133.

■ There appears in the file wrapper correspondence, between the Patent Office and counsel for the Chaplins, which demonstrates that an overriding prior art patent was eliminated as a reference by the Patent Examiner, in reliance on a statement by counsel for the Chaplins, that slots in the line of deepest die depression were vital to the Chaplin disclosure. However, no change was made in the text of the claims as the result of that correspondence. The law is clear that this Court cannot look to the arguments of counsel to the Patent Office to establish estoppel of the patentee as to the scope of allowed claims, where no change in the claims has resulted from that argument. Catalin Corp. of America v. Catalazuli Mfg. Co., 2 Cir., 1935, 79 F.2d 593, 594; Boyer v. Keller Tool Co., supra, 127 F. 130, 134; Jacquard Knitting Machine Co. v. Ordnance Gauge Co., D.C. E.D.Pa., 1951, 95 F.Supp. 902, 908; see Firestone Tire & Rubber Co. v. United States Rubber Co., 6 Cir., 1935, 79 F.2d 948, 961. When this Court comes to examine the prior art, file wrapper arguments may perhaps be properly before the Court, Bassick Co. v. Faultless Caster Corp., 7 Cir., 1939, 105 F.2d, 228, 231–232; but they are not properly before the Court at this time.

As matters now stand, this Court rules that the fourth element of overclaim has not been established as a matter of law.

The fifth and sixth omitted items both relate to drainage and may be considered together. These are "Drainage being provided from contiguous marginal edges of adjacent cover sections", and "Drainage also being provided from the die slots which receive and retain the contiguous marginal edges of adjacent cover sections." At first glance a statement from the specifications lends support to plaintiff's contention with respect to drainage. That statement reads, page 3, col. 1, lines 44 to 48: "It is obvious that any locking area where adjacent screen sections are secured to the die surface, must provide adequate drainage for the water of formation to be taken through the moulding screen uniformly at all points."

There follows a discussion of several means of achieving the desired uniformity of drainage.

■ Nevertheless, this Court is of the opinion that the drainage items are not overclaim, as a matter of law. The prior issued patents, which have been exhibited to this Court,[5] as well as the learned argu-

---

5. Keyes patent 740,023, September 29, 1903; Chaplin patent 1,158,635, November 2, 1915; and Kennedy patent 1,701,-238, February 5, 1929.

ments of all counsel, demonstrate beyond question that uniform drainage over the entire moulding surface of the die has been recognized for many years as essential for the manufacture of a pulp product of uniform thickness and strength. The quoted statement in the specifications was merely a recital of a fact which was well known in the art. Application of the drainage principle to the particular demands imposed by the presence of slots in the moulding surface, is a task of which any person skilled in the art would be capable, granted the basic idea which Chaplin had set down in the specifications. The methods of drainage discussed in the specifications are illustrative only. The applicable principle of law is stated in Deering v. Winona Harvester Works, 1894, 155 U.S. 286, 302, 15 S.Ct. 118, 124, 39 L.Ed. 153.

"* * * Admitting that additional elements are necessary to render the device operative, it does not necessarily follow that the omission of these elements invalidates the claim, or that the precise elements described in the patent as rendering it operative must be read into the claim. If [the patentee] were in fact the first to invent [the device], he is entitled to a patent therefor, though the infringer may make use of other means than those employed by him to operate it. Loom Co. v. Higgins, 105 U.S. 580, 584 [26 L.Ed. 1177]. In such case any appropriate means for making it operative will be understood. Otherwise the infringer might take the most important part of a new invention, and, by changing the method of adapting it to the machine to which it is an improvement, avoid the charge of infringement."

 Not mentioned in the motion, but referred to several times by counsel in oral argument, was a further omitted element allegedly constituting overclaim, namely, the use of the Chaplin idea exclusively for an *irregular die*. If the idea is of value at all, it can be used for a die of any size or shape, irregular or otherwise, as desired by the user. As a matter of fact, the specification for the patent in suit refers to the use of the idea in connection with dies having "large flat areas" (page 3, col. 1, line 24). Omission from the claims of any reference

to an irregular die was not overclaim as a matter of law.

It is the opinion of this Court that plaintiff's motion for summary judgment should not be granted, and that hearing should be had on the merits. It is therefore ordered, adjudged, and decreed, that plaintiff's motion for summary judgment be and hereby is

Denied.